INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,

LOCAL UNION No. 1925, etc., et al.

*v.*

JOHN T. O'BRIEN and HARRY PADGETT, D/B/A

O'BRIEN & PADGETT CONTRACTORS, ETC.

(*Jackson,* April Term, 1957.)

Opinion filed May 3, 1957.

BROOKS MCLEMORE, and PIERCE WINNINGHAM, JR., Jackson, for appellant.

LAUGHLIN, WATSON & CRESON, Memphis, HEATHCOCK, ELAM & CLOYS, Union City, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

The Chancellor allowed a discretionary appeal from his order overruling the motion of the two trade Unions, based on sworn bill and sworn answer, to dissolve the

temporary injunction issued at the time the bill was filed. Complainants, O'Brien & Padgett, a partnership, appellees here, have moved to dismiss the appeal because the order (1) was not a disposition of the cause on its merits, and (2) was not a decree from which the Chancellor, in the exercise of the discretion granted by Code Section 27-305, is authorized to allow an appeal.

Complainants, partners, O'Brien & Padgett, had the contract to erect a plant for Tennessee Packers, Inc., sometimes known as Reelfoot Packing Company, on its premises in Union City, and were engaged in the performance of this contract at the time of the happening of the events which caused the filing of this bill.

The artisans, mechanics and carpenters are furnished O'Brien & Padgett by Trade Unions from offices located in that section of the State. They do not employ nonunion labor as a general rule, and were not using such labor on this project, nor is there any labor dispute between them and any Labor Union with reference to the present project. Tennessee Packers, Inc., are in identically the same situation in every respect with reference to union labor's and their employees as that of O'Brien & Padgett.

However, the (1) electrical work and (2) plumbing work to be done on this job was awarded by Tennessee Packers to two contractors, one for each of these phases of the job, neither of which employs union labor. And these two contractors were engaged in the performance of their respective contracts with nonunion labor at the time of the happening of the events which caused this lawsuit.

There are two entrances to Tennessee Packers premises. It is necessary for the employees of O'Brien & Padgett to pass through one or the other of these entrances to get to their work. At each of these entrances on October 30 there appeared pickets. The picketing was peaceful. The bill was filed, and temporary injunction obtained, the next day.

Each Union averred that it had pickets at only one entrance. The bill alleged pickets at both entrances. The legitimate conclusion from the respective pleadings, therefore, is that one Union had its pickets at one of the entrances, and the other, its pickets at the other entrance. Thus, in so far as was made to appear by the pleadings, the Chancellor could have concluded that the two Unions were acting in concert for a common purpose.

As is generally known, members of a labor union ordinarily will not cross a picket line being maintained by another Union. This job was no exception to that practice. The employees of O'Brien & Padgett, though they had no quarrel with their employer, refused to cross either of these picket lines. The result was to shut down the work being done by O'Brien & Padgett on this contract.

The contract provided for the completion of this construction job by August 1, 1957, and it provided a penalty of $100 for each day thereafter that O'Brien & Padgett were in arrears.

The bill alleged that contracts of this nature involve considerable financial risks to the contractor; that, viewed in its most favorable light, if calculations as to favorable and unfavorable weather and other elements enter-

ing into such a business venture should go awry, financial loss reasonably might be expected to follow; that so long as these pickets were allowed to remain there the completion of the project would, to that extent, be delayed; thus great danger by such delay of causing O'Brien & Padgett irreparable damage.

The bill alleged

"that the avowed intention and purpose of the defendants in this matter is to cause complainants to influence and persuade the plumbing and electrical contractors on this project, in turn, to cause, persuade and influence their employees to join one or the other of defendant unions, or, in fact, to cause and bring about a union shop in the entire building project, which enterprise or undertaking is in violation of Section 50-209, Tennessee Code Annotated."

Assuming the truth of the allegations of the bill, a not unreasonable conclusion is (1) that irreparable damage might be done to complainants by the continuance of the picket line, and (2) such contract might be, and might be so intended, in violation of Code Sections 50-208; 209, commonly known as the Tennessee "Right to Work" Law. The action of the Chancellor, therefore, in granting the temporary injunction, prior to the filing of the answer, cannot be considered an abuse of authority.

The answer of each Union admits friendly labor relations with the complainant and the Tennessee Packers, Inc., respectively, denies any harmful intentions to either, and avers that the purpose of the picketing, as to the plumbers, is (1) to inform the public of the employment

of non-union plumbers on this job and (2) that all or some of the employees of the plumbing contractors become unionized. The electrical workers union avers its purpose is to inform the public that this particular contractor does not employ union electricians, and that "the purpose of such publication being to keep union men off the electrical contractors' job. Each answer avers an intention to indefinitely continue such picketing. Each avers that the placards and banners displayed by the pickets are in accord with only these intentions. These placards bore either one or the other of the two following legends:

(1). "This Job Employs Non-Union Electricians."

(2). "Plumbing Contractor on This Job Does Not Employ Members of Plumbers Local 407."

There very well could have occurred to The Chancellor on the face of the pleadings the thought of an inconsistency between the conduct of these Unions and the averments of their answer in that, if there was no plan between them, (1) why were they picketing, each only one, and a separate, entrance, and (2) if each, independent of the other, had only in mind to inform the public of facts as to this job with reference to its particular trade why was it limiting such information to only one of the two entrances. This is mentioned herein because the Chancellor expressed the opinion that the only purpose of the picketing was to compel the employment of union plumbers and union electricians, and that he considered this to be a violation of at least the spirit of the right to work law, whereas the Unions assert that there was no basis for such a fact conclusion.

Too, the Chancellor could not ignore the bill's allegation that "the *avowed* intention and purpose of the" (emphasis supplied) unions is to cause the employees of this (1) plumbing and (2) electrical contractor to join its union, "or in fact, to cause and bring about a union shop in the entire building project".

From the foregoing recitation of the pleadings it seems clear that the merits of this case require a consideration of the evidence, and a determination therefrom of what the facts are, and the effect thereof under the law.

In the meantime, if the Chancellor had dissolved the injunction, it is reasonable to conclude that irreparable damage might be done O'Brien & Padgett for the reasons stated in its bill and in the averments of the answers of an intention of the Unions to indefinitely continue such picketing. On the other hand, a continuation of the temporary injunction pending the taking of proof could, under any circumstances, do the Unions very little, and no irreparable, damage. Certainly, therefore, under the balance of convenience rule, the Chancellor did not abuse his discretion in continuing the temporary injunction pending a hearing on the merits.

However, the Chancellor did err in granting a discretionary appeal from his order overruling the motion to dissolve the temporary injunction.

Section 27-305, T.C.A. (being 9038 of the 1932 Code), "defines the cases in Chancery Court in which the Chancellor may grant discretionary appeals. Such discretion of the Chancellor is limited to the cases specified." *Brewing Corp. of America v. Pioneer Distributing Co.*, 194 Tenn. 588, 591, 253 S.W.2d 761, 762. And

that statute, under the holdings of this Court, "did not justify the allowance of an appeal from the decree denying the 'motion to dissolve the injunction on the pleadings.' " *Hoover Motor Express Co. v. Fort,* 167 Tenn. 628, 631, 72 S.W.2d 1052, 1053.

The motion of the appellees, O'Brien and Padgett, to dismiss the appeal must be granted. The costs of the appeal will be taxed against the Unions, and the cause will be remanded for further appropriate proceedings with the adjudication of costs there to follow the results.