HOOVER MOTOR EXPRESS CO., INC., *et al. v.* FORT, COMMISSIONER, *et al.*

(*Nashville*, December Term, 1933.)

Opinion filed June 23, 1934.

630

RICHARD GLEAVES and W. C. CHERRY, both of Nashville, for appellants.

ROY H. BEELER, Attorney-General, and EDWIN F. HUNT, Assistant Attorney-General, for appellees.

CHARLES N. BURCH, of Memphis, *amicus curiæ*.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This suit was brought by several concerns, operating trucks over the highways of the state, against designated state officials to enjoin the enforcement of chapter 35 of the Public Acts of 1933, amended by chapter 143 of the Public Acts of the same year. These statutes, among other things, limit the weight and dimensions of such vehicles as the complainants have been operating. The chancellor held the legislation invalid, and the state officials have appealed.

A *fiat* for the preliminary injunction was obtained by the complainants at the filing of the bill. The defendants interposed a demurrer and at the same time filed an answer to support their motion to dissolve the injunction. As we read the decree of the chancellor, he overruled the demurrer, and by the same order refused to dissolve the injunction.

The chancellor permitted defendants an appeal from this decree "insofar as it overrules their demurrer and denies their motion to dissolve the injunction on the pleadings." Section 9038 of the Code, authorizing the chancellor in his discretion to permit appeals from certain interlocutory orders, justified the allowance of the appeal from the decree herein to the extent that the decree overruled the demurrer. This statute, however, did not justify the allowance of an appeal from the decree denying the "motion to dissolve the injunction on the pleadings." *Mengle Box Co.* v. *Lauderdale County,* 144

Tenn., 266, 230 S. W., 963, and authorities cited. The case as it is before us, therefore, brings up only the bill, the amended bill, and the demurrers thereto. We assume that defendants, in prosecuting the appeal under section 9038, have abandoned their answer.

Chapter 35 of the Public Acts of 1933 is entitled ''An Act to protect the safety of travel on highways of the State as defined in this Act and for the better presentation (preservation) of such highways by declaring and limiting the conditions under which motor vehicles primarily designed and used for the hauling of property or freight may be used on said highways,'' etc.

It is not necessary to set out the various sections of the statute. Reference will be made to several sections of the act in the course of the opinion. The chief controversy presented arises out of section 4 and section 5 of the act and the exceptions to the provisions of these sections contained in section 7.

Section 4. ''That no motor vehicle subject to this Act or any trailer or semi-trailer, whose width, including any part of the load, exceeds eight feet (that is, four feet on each side of the center line of the vehicle) or whose height, including any part of the load, exceeds twelve feet, shall be operated on any highway.

Section 5. ''That no motor vehicle subject to this Act weighing in the aggregate, with load or loads included, more than Eighteen Thousands pounds, shall be operated on any highway, and in ascertaining the weight of any motor vehicle with trailer or semi-trailer attached, weight of the motor vehicle, the weight of the trailer or semi-trailer and the weight of the load or loads on both shall be added and the total of all said aforementioned weights

shall not exceed eighteen thousand pounds. And it is hereby declared to be the purpose of this section to treat a motor vehicle with trailer attached or a motor vehicle with semi-trailer attached as one vehicle and not as two separate vehicles.

"The Commissioner of Highways and Public Works shall have authority to provide by rule, which may from time to time be changed upon reasonable public notice to meet changing conditions, the manner in which the maximum weight herein authorized is to be distributed, with the end in view of minimizing the wear and tear on the public roads of the State.

Section 7. "That this Act shall not apply to any motor vehicle operated by the United States or by the State of Tennessee or any county or municipality of the State of Tennessee; nor shall this Act apply to motor vehicles while operating on the streets of any municipal corporation or on any highway for a distance of five miles beyond the limits of any municipal corporation having a population of twenty thousand or less; or a distance of five miles beyond the limits of any municipal corporation having a population of more than twenty thousand but not exceeding one hundred thousand; or a distance of twelve miles beyond the limits of any municipal corporation having a population of more than one hundred thousand, said populations to be determined by the United States census of 1930 or any subsequent United States census; nor shall the provisions of this Act apply to farm tractors or farm machinery temporarily moving on any highway."

The chancellor was of opinion that the exceptions contained in section 7 destroyed the asserted tendency of the

statute to preserve the highways of the state, and that the effect of these exceptions was to make of this statute an enactment creating unjustifiable and arbitrary classifications in contravention of the due process and equal protection provisions of the Fourteenth Amendment to the Constitution of the United States and similar provisions of section 8 of article 1 and section 8 of article 11 of the Constitution of Tennessee.

The chancellor further expressed the opinion that chapter 35 of the Public Acts of 1933 was an exercise of the police power of the state and not an exercise of the proprietary power of the state. There has been much debate as to this question in this court. If the chancellor was correct in saying that this statute had no reasonable tendency to preserve the highways of the state, then no doubt he properly concluded that the act should be tested as a mere police regulation. If, on the contrary, the statute does tend to protect and preserve the state's highways, the state's property, we can but regard it as an exercise of the state's proprietary power.

The Supreme Court of the United States, in several recent decisions, has considered the powers of the state with regard to the regulation and prohibition of traffic on state highways. It seems to us that all the substantial questions raised by the complainants in this case have been considered and determined adversely to complainants' contentions in the decisions of the Supreme Court. Since that court is the final arbiter of questions such as are herein raised by the complainants, independent discussion of these questions by this court would be of little profit and lack authority. We find it sufficient, therefore, in the disposition of this case, for the most

part, to confine the opinion to bare references to the rulings of the Supreme Court of the United States.

Decisions of that tribunal to which we refer, and which have covered practically all the points made by complainants, are: *Packard* v. *Banton,* 264 U. S., 140, 44 S. Ct., 257, 68 L. Ed., 596; *Frost & Frost Trucking Co.* v. *Railroad Comm.,* 271 U. S., 583, 46 S. Ct., 605, 70 L. Ed., 1101, 47 A. L. R., 457; *Hodge Co.* v. *Cincinnati,* 284 U. S., 337, 52 S. Ct., 144, 76 L. Ed., 323; *Continental Baking Co.* v. *Woodring,* 286 U. S., 352, 52 S. Ct., 595, 76 L. Ed., 1155, 81 A. L. R., 1402; *Sproles* v. *Binford,* 286 U. S., 374, 52 S. Ct., 581, 588, 76 L. Ed., 1167; *Stephenson* v. *Binford,* 287 U. S., 251, 53 S. Ct., 181, 187, 77 L. Ed., 288, 87 A. L. R., 721.

These cases lay down certain fundamental propositions. Among others, that the primary use of the state highways is the use for private purposes; that no person is entitled to use the highways for gain as a matter of common right; that as a proprietor, in preserving its highways, the state may, with little restraint, prescribe the conditions on which those highways can be used.

One objection made by complainants to the act of 1933 is that it applies only to motor vehicles used for carrying freight and does not apply to motor vehicles used for the hauling of passengers. It is said that a bus with its load often weighs more than a truck with its load, is therefore more destructive to the highway, and that the discrimination between trucks and busses cannot be justified.

To the same argument, which was presented in *Sproles* v. *Binford, supra,* it was said:

"But in passing upon the question of the constitutional

power of the state to fashion its regulations for the use of the highways it maintains, we cannot ignore the fact that the state has a distinct public interest in the transportation of persons. We do not think that it can be said that persons and property, even with respect to their transportation for hire, must be treated as falling within the same category for purposes of highway regulation. The peculiar importance to the state of conveniences for the transportation of persons in order to provide its communities with resources both of employment and of recreation, the special dependence of varied social and educational interests upon freedom of ' intercourse through safe and accessible facilities for such transportation, are sufficient to support a classification of passenger traffic as distinct from freight.''

■ It is contended that conflicting provisions of section 2 and section 5 of the act render the statute impossible to comprehend and therefore incapable of enforcement. The supposed inconsistency is in the provision with reference to trailers. It does not appear from the bill herein that the complainants use any trailers in connection with their vehicles. They are therefore not adversely affected and are not entitled to make such point against the statute.

■ Objection is made to section 6 of the act (as amended by Pub. Acts 1933, chap. 143), which regulates the speed and prohibits the operation, with certain exceptions, of vehicles having brakes upon the two rear wheels only. To this it may be answered, as above, that complainants do not show themselves adversely affected by this section of the statute.

■ Some other minor questions are raised by the

pleadings but were not pressed in argument and need not be noticed. This brings us to the complainants' main propositions: (1) That the statute has no real relation to the preservation of the state's highways by reason of the exceptions contained in section 7; and (2) that such exceptions bring about a capricious classification which destroys the enactment.

As above set out, section 7 provides that the weight and dimension limitations upon motor vehicles shall not apply to those operating on the streets of any municipal corporation or within a distance of five miles beyond the limits of any such corporation having a population of one hundred thousand or less or within a distance of twelve miles beyond the limits of any such corporation having a population of more than one hundred thousand. The complainants offer some facts showing that the exemption limits cover a large portion of the highways of the state, that traffic is heaviest within the exempted limits, and that the protection afforded the highways of the state as a whole is inconsiderable. It is said that the only substantial effect of the statute will be to remove from the highways trucks of the forbidden weight and dimensions making a long haul; that the true purpose of the statute was not to protect the highways but to prohibit long hauls thereupon in the interest of the railroad carriers.

To the extent that long-haul traffic by heavy vehicles is removed from the highways, the highways are certainly protected. We do not follow the argument that, because the statute may not protect the highways as much as it might, it does not protect them at all, and therefore can-

not be considered as legislation having a reasonable relation to that end.

 The extent to which the means adopted to conserve the highways "conduce to that end, the degree of their efficiency, the closeness of their relation to the end sought to be attained, are matters addressed to the judgment of the legislature, and not to that of the courts. It is enough if it can be seen that in any degree, or under any reasonably conceivable circumstances, there is an actual relation between the means and the end." *Stephenson* v. *Binford, supra.*

Neither the bill nor the amended bill shows what percentage of heavy traffic over the highways consists of trucks making long hauls. As before noted, this appeal is before us on the bill, the amended bill, and the demurrers. We cannot say, in this plight of the record, that the protection to the highways that will flow from this act is too inconsequential to be noticed or so inconsequential as to impugn the legislative intent.

 Passing to the question of classification, the exemption of municipal corporations and contiguous territory from statutory provisions like this was expressly upheld by the Supreme Court in *Continental Baking Co.* v. *Woodring, supra.* In that case the court had before it a Kansas statute (Laws Kansas, 1931, chap. 236) regulating motor carriers which excepted those operating wholly within any city or village of this State and excepting private motor carriers who operated within a radius of twenty-five miles beyond the corporate limits of such city or village. It was said:

"The first question is whether the State, in legislation of this sort, may provide for such carriers an exempt zone

contiguous to its municipalities. We find no difficulty in concluding that it may. As the District Court pointed out, there is 'a penumbra of town' that is outside municipal limits, and delivery trucks, of those having establishments within the municipalities, in their daily routine repeatedly cross these limits 'in going back and forth into these outlying additions.' "

In this conclusion reached by the Supreme Court it referred to certain facts found by the district court. It is easy to conceive of facts that may here exist that would justify the exemption. As to the exemption of trucks operating within municipal corporations, it was said such an exemption "has an obviously reasonable basis, as such operations are subject to local regulations. In protecting its highway system the state was at liberty to leave its local communities unembarrassed, and was not bound either to override their regulations or to impose burdensome additions."

In addition to the foregoing, as we understand the Supreme Court, it is permissible for the state to enact legislation tending to divert traffic from carriers by truck to carriers by rail, because the burden on the highways will be thereby lightened and because the state is interested in preserving both forms of transportation.

In *Sproles* v. *Binford, supra,* provisions of a Texas statute were challenged on the ground that their real purpose was to favor the railroad carriers. To this the Supreme Court replied:

"If this was the motive of the Legislature, it does not follow that the classification as made in this case would be invalid. The state has a vital interest in the appropriate utilization of the railroads which serve its

people as well as in the proper maintenance of its highways as safe and convenient facilities. The state provides its highways and pays for their upkeep. Its people make railroad transportation possible by the payment of transportation charges. It cannot be said that the state is powerless to protect its highways from being subjected to excessive burdens when other means of transportation are available. The use of highways for truck transportation has its manifest convenience, but we perceive no constitutional ground for denying to the state the right to foster a fair distribution of traffic to the end that all necessary facilities should be maintained and that the public should not be inconvenienced by inordinate uses of its highways for purposes of gain."

And again in *Stephenson* v. *Binford, supra,* the court said:

"Leaving out of consideration common carriers by trucks, impairment of the railway freight service, in the very nature of things, must result, to some degree, in adding to the burden imposed upon the highways. Or, stated conversely, any diversion of traffic from the highways to the railroads must correspondingly relieve the former and therefore contribute directly to their conservation. There is thus a substantial relation between the means here adopted and the end sought."

 In the two cases from which we have just quoted the Supreme Court was dealing with the complaints of contract carriers. In the case before us the complainants are common carriers. conducting a business affected with a public use, and the regulation of their business is the more readily to be sustained. At most the regulation only tends "to foster a fair distribution of traffic" and to

allot to each common carrier that class of traffic which it is best equipped to handle.

There has been some argument as to the scope of this act, just what operations it covers, but we need not go into this, since, under any construction, the complainants' trucks are so operating as to be within the regulation of the statute.

As heretofore mentioned, some other points on the legislation were made in the pleadings but not noticed in argument. Similar contentions have been so fully considered and effectually disposed of in the decisions of the Supreme Court herein cited, we assume counsel no longer regard them worth while. At any rate, we could add nothing to what the Supreme Court has said concerning such matters.

Reversed, and bill dismissed.