**Warnie H. GUTRIDGE, et al., Plaintiffs,**

v.

**COMMONWEALTH OF VIRGINIA, Defendant.**

**Civ. A. No. 81–0614–A.**

United States District Court, E. D. Virginia, Alexandria Division.

Jan. 28, 1982.

Kenneth E. Labowitz, Alexandria, Va., for plaintiffs.

John S. Morris, III, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

Plaintiff Warnie H. Gutridge is a truck driver who operates vehicles both wholly in Virginia and in interstate commerce. Plaintiff Jay's Trucking Co., Inc., is Gutridge's employer. It owns trucks that travel in both intrastate and interstate commerce. Plaintiff Milton F. Wright Trucking Inc. also owns trucks that operate in both streams of commerce. The plaintiffs have filed a section 1983 action seeking a

declaratory judgment that Virginia's system of truck weight regulations is unconstitutional. *See* 28 U.S.C. § 2201 (1976); 42 U.S.C. § 1983 (1976). They contend that these restrictions violate both the equal protection clause and the commerce clause. The plaintiffs also request an injunction prohibiting further enforcement of the challenged regulations. The defendant in this suit is the Commonwealth of Virginia.

## I. FACTUAL BACKGROUND

Virginia's state legislature has enacted a series of vehicle weight regulations. *See* Va. Code §§ 46.1–339 to –347 (1980). Section 46.1–339 provides a schedule of the maximum truck weights generally permitted on Virginia's roads. *See id.* § 46.1–339(d). These weight limits vary with the number of axles that a truck has and the distance in feet between the first and last axles. *See id.* The limits range from 34,000 pounds for a two-axle vehicle with a four-foot axle distance to 76,000 pounds for a five-axle truck with a forty-five-foot axle distance.[1]

The sections that follow section 46.1–339 create several exceptions to the general weight schedule. Four of these exceptions are relevant to the present case. First, section 46.1–343(a)(2) raises the weight limits for vehicles "carrying containerized cargo in a sealed, seagoing container bound to or from a Virginia seaport." *Id.* § 46.1–343(a)(2). Trucks hauling such containers may have a gross weight of up to 78,000 pounds. *See id.*

The second exception is section 46.1–343(b1). This provision raises the weight ceilings for "three-axle vehicles used exclusively for the mixing of concrete in transit or at a project site or for transporting necessary components to produce concrete immediately upon arrival at the project site." *Id.* § 46.1–343(b1). Trucks qualifying under this exception may have a gross weight of up to 60,000 pounds. *See id.*

Third, section 46.1–343(c) increases the weight limit for special vehicles used in hauling coal from the mine to the preparation plant, loading dock, or railroad. *See id.* § 46.1–343(c). The maximum gross weights allowed under this provision are 60,000 pounds for three-axle vehicles and 70,000 pounds for four-axle vehicles. *See id.* To qualify for this exception, a truck

---

1. Section 46.1–339 provides the following schedule of maximum gross weights:

The gross weight imposed upon the highway by a vehicle or combination shall not exceed the maximum weight given for the respective distance between the first and last axle of the group of axles measured longitudinally to the nearest foot as set forth in the following table:

| Distance in feet between the extremes of any group of axles | Maximum weight in pounds on any group of axles | | |
|---|---|---|---|
| | 2 axles | 3 axles | 4 axles | 5 axles |
| 4 | 34,000 | | | |
| 5 | 34,000 | | | |
| 6 | 34,000 | | | |
| 7 | 34,000 | | | |
| 8 | 34,000 | 42,000 | | |
| 9 | 39,000 | 42,500 | | |
| 10 | 40,000 | 43,500 | | |
| 11 | | 44,000 | | |
| 12 | | 45,000 | 50,000 | |
| 13 | | 45,500 | 50,500 | |
| 14 | | 46,500 | 51,500 | |
| 15 | | 47,000 | 52,000 | |
| 16 | | 48,000 | 52,500 | 58,000 |
| 17 | | 48,500 | 53,500 | 58,500 |
| 18 | | 49,500 | 54,000 | 59,000 |
| 19 | | 50,000 | 54,500 | 60,000 |
| 20 | | 51,000 | 55,500 | 60,500 |
| 21 | | 51,500 | 56,000 | 61,000 |
| 22 | | 52,500 | 56,500 | 61,500 |
| 23 | | 53,000 | 57,500 | 62,500 |
| 24 | | 54,000 | 58,000 | 63,000 |
| 25 | | 54,500 | 58,500 | 64,500 |
| 26 | | 55,500 | 59,500 | 65,000 |
| 27 | | 56,000 | 60,000 | 65,000 |
| 28 | | 57,000 | 60,500 | 65,500 |
| 29 | | 57,500 | 61,500 | 66,000 |
| 30 | | 58,500 | 62,000 | 66,500 |
| 31 | | 59,000 | 62,500 | 67,500 |
| 32 | | 60,000 | 63,500 | 68,000 |
| 33 | | | 64,000 | 68,500 |
| 34 | | | 64,500 | 69,000 |
| 35 | | | 65,500 | 70,000 |
| 36 | | | 66,000 | 70,500 |
| 37 | | | 66,500 | 71,000 |
| 38 | | | 67,500 | 72,000 |
| 39 | | | 68,000 | 72,500 |
| 40 | | | 68,500 | 73,000 |
| 41 | | | 69,500 | 73,500 |
| 42 | | | 70,000 | 74,000 |
| 43 | | | 70,500 | 75,000 |
| 44 | | | 71,500 | 75,500 |
| 45 | | | 72,000 | 76,000 |

Va. Code 46.1–339(d) (1980).

must be designed to permit a visual determination of whether it is carrying more than the permitted amount of coal.[2] Furthermore, the vehicle may not operate at the higher weight limits for more than thirty-five miles from the preparation plant, loading dock, or railroad. *See id.*

The final exception that is relevant in this case is section 46.1–343.1. This provision raises the weight ceilings for trucks hauling farm produce on the Eastern Shore. *See id.* § 46.1–343.1. Three-axle vehicles may have a gross weight of up to 50,000 pounds. *See id.* The section does not change the maximum gross weight for four-axle trucks. It, however, does raise the maximum tandem axle weight for such vehicles to 36,000 pounds. *See id.*

On October 30, 1980, Warnie Gutridge was convicted in the Fairfax County Circuit Court on two counts of operating a truck in violation of section 46.1–339. Gutridge was assessed fines, costs, and liquidated damages totalling $2,900. He appealed these convictions to the Supreme Court of Virginia. The higher court, however, denied certiorari on May 1, 1981. Gutridge has not attempted to appeal his case to the United States Supreme Court.

Jay's Trucking Co., Inc., and Milton F. Wright Trucking have applied for permits to operate their vehicles under the various weight exceptions contained in sections 46.-1–343 and 46.1–343.1. The authorities empowered to issue such permits, however, have continuously denied or deferred the two companies' applications. Furthermore, the two trucking concerns clearly are not eligible for the permits under the language of the statutes. Their trucks, nonetheless, are capable of hauling the same bulk commodities that are carried by vehicles qualifying under the exceptions. These commodities include concrete, coal, and farm produce.

On June 23, 1981, Gutridge, Jay's Trucking Co., and Milton F. Wright Trucking filed a section 1983 action against the Commonwealth of Virginia. In this suit, the plaintiffs allege that Virginia's system of truck weight regulations is unconstitutional on two grounds. First, they contend that the presence in the system of containerized cargo, concrete-mixer, coal-hauling, and Eastern Shore produce exceptions violates the equal protection clause. Second, the plaintiffs argue that the weight system as a whole is invalid under the commerce clause. The defendant moves for summary judgment on these claims.

## II. THE EQUAL PROTECTION ISSUE

The plaintiffs' first claim is that sections 46.1–343(a)(2), 46.1–343(b1), 46.1–343(c), and 46.1–343.1 of the Virginia Code violate the equal protection clause. Each of these sections restricts its weight limit exception to a narrow class of vehicle operators. The plaintiffs are not eligible for any of these exceptions. They argue that these provisions unlawfully discriminate against them, because there is no rational basis for distinguishing between them and the members of the eligible classes.

The level of scrutiny to which the court must subject Virginia's weight regulations depends on whether the regulations affect either a suspect class or a fundamental right. If the challenged state action does not involve either of the two, it will not "be subjected to the searching judicial scrutiny reserved for laws that create suspect classifications or impinge upon constitutionally protected rights." *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 40, 93 S.Ct. 1278, 1300, 36 L.Ed.2d 16 (1973). It, instead, will receive "the traditional standard of review, which requires only that the State's system be shown to bear some rational relationship to legitimate state purposes." *Id. Accord McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973).

---

**2.** A coal truck may meet this requirement in one of two ways. First, it may carry a bed that cannot haul more than the permitted amount of coal without exposing the excess over the top of the bed. *See* Va.Code § 46.1–343(c) (1980).

Second, if the truck has a larger bed, the operator must paint a line on the bed and cut holes in it at the proper level. *See id.* These holes allow a visual inspection of the amount of coal.

Virginia's system of weight restrictions clearly does not create a suspect classification. A suspect class is one which is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School District v. Rodriguez*, 411 U.S. at 28, 93 S.Ct. at 1293. The group of truck operators represented by the plaintiffs does not fall within this definition. In addition, the right to haul cargo on Virginia's roads is not a fundamental right explicitly or implicitly guaranteed by the Constitution. *See South Carolina State Highway Department v. Barnwell Brothers, Inc.*, 303 U.S. 177, 189–90, 58 S.Ct. 510, 515–16, 82 L.Ed. 734 (1938); *Sproles v. Binford*, 286 U.S. 374, 388, 52 S.Ct. 581, 585, 76 L.Ed. 1167 (1932). The court, therefore, will apply the rational-basis standard of review, rather than the strict-scrutiny test.

■ The first provision challenged by the plaintiffs is the containerized cargo exception of section 46.1–343(a)(2). Encouraging the growth of a particular form of transportation is a legitimate legislative purpose. *See Sproles v. Binford*, 286 U.S. at 394, 52 S.Ct. at 587. Containerized cargo is an integral part of international trade. Facilitating its transportation to and from Virginia's ports aids in the development of such ports. Thus, the containerized cargo exception stands up under a rational-basis examination.

The plaintiffs next attack the concrete-mixer exception of section 46.1–343(b1). Concrete-mixers are specialized vehicles that by necessity weigh more than other trucks. The language of the exception limits the distance and speed of travel for these vehicles to low levels. *See* Va.Code § 46.1–343(b1) (1980). Under such circumstances, the state legislature has a rational basis for relaxing weight restrictions. *See Sproles v. Binford*, 286 U.S. at 391–92, 52 S.Ct. at 586.

The coal-hauling exception also passes the rational-basis test. It is reasonably related to two legitimate legislative objectives. First, it promotes the efficient transportation of coal from the mine to the processing plant or railroad loading dock. *See id.* 286 U.S. at 393–95, 52 S.Ct. at 586–87. Second, the requirements of the exception aid enforcement of the weight limits. Thus, section 46.1–343(c) is valid under the equal protection clause.

Finally, the plaintiffs challenge the Eastern Shore farm produce exception of section 46.1–343.1. The seasonal nature of farming limits the use of this exception to the warmer months of the year when the potential for road damage is least. In addition, the peculiar geography of the Eastern Shore creates transportation impediments that place the farmers of that area at a disadvantage in marketing their produce. A shortage of vehicles in the region compounds the problem. The relaxation of weight limits reduces the number of trucks needed to haul the produce. Section 46.1–343.1, therefore, furthers the legitimate legislative goal of remedying the Eastern Shore's transportation difficulties.

All four of the exceptions attacked by the plaintiffs pass the rational-basis test. As a consequence, none of them violate the equal protection clause. This result makes sense in policy terms. If the court had overturned one of the exceptions in the absence of a suspect classification or a fundamental right, it, in effect, would have revived the notion of economic due process. The Supreme Court discarded that form of due process long ago. *See Williamson v. Lee Optical Co.*, 348 U.S. 483, 488–89, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955); *Day-Brite Lighting, Inc. v. Missouri*, 342 U.S. 421, 423–25, 72 S.Ct. 405, 407–08, 96 L.Ed. 469 (1952).

## III. THE COMMERCE CLAUSE ISSUE

The plaintiffs' second claim is that Virginia's system of weight restrictions violates the commerce clause. They argue that the general weight limits unduly bur-

den interstate commerce, because the limits are so much lower than those imposed by neighboring states. In addition, the plaintiffs contend that the exceptions contained in sections 46.1–343(a)(2), 46.1–343(b1), 46.-1–343(c), and 46.1–343.1 discriminate against interstate commerce by favoring goods produced in Virginia.

 The commerce clause confers power to regulate interstate commerce on the federal government. *Southern Pacific Co. v. Arizona*, 325 U.S. 761, 766, 65 S.Ct. 1515, 1518, 89 L.Ed. 1915 (1945). The fact that Congress possesses this power, however, does not exclude all state power of regulation. *Id.* In the absence of conflicting federal legislation, the states may "make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *Id.* 325 U.S. at 767, 65 S.Ct. at 1519. *See also Kassel v. Consolidated Freightways Corp.*, 450 U.S. 662, 669, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981) (quoting *Southern Pacific*). Congress clearly has not preempted the power of the states to limit truck weights on state roads. *See* 450 U.S. at 670, 101 S.Ct. at 1316; 325 U.S. at 783, 65 S.Ct. at 1527. In addition, regulation of such weights is "peculiarly of local concern." 325 U.S. at 783, 65 S.Ct. at 1527.

Thus, Virginia has the power to regulate motor vehicle weights.

 The plaintiffs first contend that the general weight schedule of section 46.1–339 unduly burdens interstate commerce. To test this assertion, the court must weigh the degree of interference with interstate commerce against the state's interest in regulating its roads. *See Kassel v. Consolidated Freightways Corp.*, 450 U.S. at 670–71, 101 S.Ct. at 1316; *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. 429, 441–43, 98 S.Ct. 787, 794–95, 54 L.Ed.2d 664 (1978); *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520, 524, 79 S.Ct. 962, 964, 3 L.Ed.2d 1003 (1959); *Southern Pacific Co. v. Arizona*, 325 U.S. at 768–69, 65 S.Ct. at 1519–20. The plaintiffs argue that Virginia's weight limits are unusually burdensome, because the limits are so much lower than those of neighboring states. In particular, the plaintiffs allege that Virginia's weight ceilings are well below those imposed by Maryland. A comparison of the two states' limits, however, reveals that Virginia's general weight schedule is, on the whole, no lower than that used by Maryland.[3] Thus, the burden on interstate com-

---

**3.** Maryland's transportation code provides the following schedule of maximum gross weights:

(a) Gross weight of vehicles — Distance between axles —

\* \* \*

(3) The gross weight of any vehicle or combination of vehicles may not exceed the following limits, prorated for fractions of a foot:

| Distance between first and last axles (in feet) | Gross weight (in pounds) | Distance between first and last axles (in feet) | Gross weight (in pounds) |
|---|---|---|---|
| 4 | 40,000 | 18 | 51,500 |
| 5 | 40,000 | 19 | 53,000 |
| 6 | 40,000 | 20 | 54,500 |
| 7 | 40,000 | 21 | 55,500 |
| 8 | 40,000 | 22 | 56,500 |
| 9 | 41,650 | 23 | 57,500 |
| 10 | 42,500 | 24 | 58,700 |
| 11 | 43,350 | 25 | 59,650 |
| 12 | 44,200 | 26 | 60,600 |
| 13 | 45,050 | 27 | 61,550 |
| 14 | 45,900 | 28 | 62,500 |
| 15 | 47,000 | 29 | 63,450 |
| 16 | 48,500 | 30 | 64,400 |
| 17 | 50,000 | 31 | 65,350 |

| Distance between first and last axles (in feet) | Gross weight (in pounds) | Distance between first and last axles (in feet) | Gross weight (in pounds) |
|---|---|---|---|
| 32 | 66,300 | 36 | 70,100 |
| 33 | 67,250 | 37 | 71,050 |
| 34 | 68,200 | 38 | 72,000 |
| 35 | 69,150 | 39 | 72,950 |
| | | 40 | 73,280 |

| Distance between first and last axles (in feet) | Maximum gross weight limit (in pounds) up to 5 axles | Maximum gross weight limit (in pounds) 6 axles |
|---|---|---|
| 41 | 73,500 | 78,500 |
| 42 | 74,000 | 79,000 |
| 43 | 75,000 | |
| 44 | 75,500 | |
| 45 | 76,000 | |
| 46 | 76,500 | |
| 47 | 77,500 | |
| 48 | 78,000 | |
| 49 | 78,500 | |
| 50 | 79,000 | |

merce is negligible. The court also notes that weight regulation is an integral part of Virginia's highway safety program.[4] The court, therefore, holds that the plaintiffs have failed to overcome the strong presumption of validity that surrounds state safety regulations. *See Kassel v. Consolidated Freightways Corp.*, 450 U.S. at 670, 101 S.Ct. at 1316; *Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 442, 98 S.Ct. at 794; *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. at 524, 79 S.Ct. at 964.

■ The plaintiff next argues that four of the exceptions to the general weight schedule discriminate against interstate commerce by favoring goods produced in Virginia. To the extent that this allegation is correct, the exceptions violate the commerce clause. *See Raymond Motor Transportation, Inc. v. Rice*, 434 U.S. at 446–47, 98 S.Ct. at 796–97; *South Carolina State Highway Department v. Barnwell Brothers, Inc.*, 303 U.S. 177, 185–87, 58 S.Ct. 510, 513–14, 82 L.Ed. 734 (1938). The concrete-mixer and coal-hauling exceptions clearly do not discriminate against interstate commerce, because they apply equally to in-state and out-of-state products. *See* Va. Code §§ 46.1–343(b1), –343(c) (1980). The containerized cargo exception, however, grants its exemption only to containers "bound to or from a Virginia seaport." *Id.* § 46.1–343(a)(2). In addition, the Eastern Shore produce provision applies only to

"farm produce grown in Virginia." *Id.* § 46.1–343.1. These latter two exceptions may unlawfully discriminate against interstate commerce. The plaintiffs, however, have no standing to challenge these provisions. They have not alleged that they were denied permits because they were hauling out-of-state goods. Thus, the court need not decide whether the two exceptions violate the commerce clause.

Even if the court were to hold that the two exceptions do unlawfully discriminate against interstate commerce, the remedy would be simply to delete the clauses limiting their application to goods originating in Virginia. There would be no need to do away either with the exceptions or with the system of weight limits as a whole. Thus, a finding of unlawful discrimination would not aid the plaintiffs' cause. As a consequence, the court denies the plaintiffs' commerce clause claim.

---

(b) Same—Number of axles. — The gross weight of any vehicle or combination of vehicles may not exceed the following limits:

| Number of axles | Gross weight (in pounds) |
| --- | --- |
| Three or less | 55,000 |
| Four | 66,000 |
| Five as provided for in § 13–916 or § 13–923 of this article (1980, ch. 539.) | 79,000 |

Md.Transp.Code Ann. § 24–109 (1977 & Supp. 1981).

Virginia's general weight limits are no more stringent than those imposed by Maryland. Virginia lists limits for ninety-six axle-distance combinations. On fifty-four of these combinations, Virginia's ceiling is higher than that of Maryland. On ten, Virginia and Maryland use the same limit. On only thirty-two is Virginia's ceiling lower. Maryland does permit a maximum ceiling that is three thousand pounds higher than that allowed by Virginia. The court, nonetheless, concludes that, on the whole, the weight systems of the two states are remarkably similar.

**4.** Vehicle weight limits are an essential part of a highway safety program, because the amount of damage to the roads and danger to the traveling public rises as the weights of vehicles increase. *See* Stipulation of Facts No. 9 of December 10, 1981. *See generally Southern Pac. Co. v. Arizona*, 325 U.S. 761, 783, 65 S.Ct. 1515, 1527, 89 L.Ed. 1915 (1945); *South Carolina State Highway Dep't v. Barnwell Bros., Inc.*, 303 U.S. 177, 194–95, 58 S.Ct. 510, 518–19, 82 L.Ed. 734 (1938).