No. 57,051

STATE OF KANSAS, *Appellee,* v. ROGER A. MOORE, *Appellant,* and STATE OF KANSAS, *Appellee,* v. CHARLES H. POWERS, *Appellant.*

(701 P.2d 684)

Opinion filed June 21, 1985.

*Dwight J. Parscale,* of Topeka, argued the cause and was on the brief for appellants.

*Arthur R. Weiss,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal by two defendants who were convicted of operating an overweight motor vehicle in violation of K.S.A. 1984 Supp. 8-1908. Each appeal has been submitted to this court on an agreed statement of facts which the trial court approved. The agreed factual statement, in substance, is as follows: Roger A. Moore and Charles H. Powers are drivers of trash hauling trucks for Topeka Waste Systems. On October 13, 1983, Moore was issued an overweight ticket pursuant to K.S.A. 1984 Supp. 8-1908 on U.S. Highway 75, mile post 167, which is located just south of the entrance to the Topeka Waste Systems landfill in Shawnee County. Moore's truck was weighed on portable scales by an agent of the Department of Revenue; the scales reflected that Moore's truck was 1800 pounds overweight on the second axle. On October 27, 1983, Charles Powers was issued an overweight ticket pursuant to K.S.A. 1984 Supp. 8-1908

at the same location. Powers's truck was also weighed on portable scales by an agent of the Department of Revenue and found to be 3,000 pounds overweight.

At the trial, the evidence was uncontested that the Department of Revenue had established its temporary weighing scales outside the landfill and was requiring all private trash haulers to pull in and have their trucks weighed, some as many as three times in a day. In addition, certain trucks belonging to the Shawnee County Refuse Department were also pulled over and weighed and then allowed to proceed, even though some were overweight, because they were exempt under the statute as vehicles owned by a political subdivision. It was further uncontested that, as a result of the exemption from weight restrictions under K.S.A. 8-1911, the Shawnee County Refuse Department had started using a much larger truck having a capacity of 33 cubic yards for picking up and hauling trash. The use of larger trucks gives the Shawnee County Refuse Department a substantially larger competitive edge in the area of costs per pick-up, because they do not have to make as many trips to the landfill as the private haulers.

At the trial, it was further agreed that all garbage trucks were pulled over and that no officers or agents had followed any of the trucks that were ticketed or stopped along their routes, nor did any of the officers or agents observe any of the loads prior to their being stopped at the temporary weigh station located south of the Topeka landfill. The parties agreed that the overweight tickets issued were not always issued on the first or even second trip through the scales when the trucks were not overweight but on a later trip when the driver actually went through thinking that, because he did not have a full load, he would not be overweight. Following the filing of the charges, the defendants entered pleas of not guilty in the two criminal cases. A joint trial was conducted by an assigned district magistrate judge, who found both parties to be guilty but imposed no fines when he was informed that the decision was to be appealed. The case was then presented on appeal before Judge E. Newton Vickers where each conviction was affirmed and fines were assessed. The defendants jointly appealed their convictions to this court.

At the trial of the cases, each of the defendants raised two issues:

(1) Whether the agents of the Department of Revenue had probable cause, as required by K.S.A. 8-1910, to require the two trash trucks to stop and submit to a weighing on the scales which were provided.

(2) Whether the exemption of county owned trash trucks from the weight requirement of K.S.A. 1984 Supp. 8-1908 constituted an unreasonable and discriminatory classification in violation of the equal protection clauses of the United States and Kansas Constitutions.

The district court rejected both of these contentions and found each of the defendants guilty. The same issues are raised on the appeal.

The first issue to be determined is whether the Department of Revenue agent had the right to set up a temporary scales position outside the landfill and to stop the trash trucks and require them to be weighed. Before considering the facts of this case, it would be helpful at the outset to consider the various Kansas statutes which are involved. K.S.A. 1984 Supp. 8-1908 provides for gross weight restrictions on the wheels and axles of motor vehicles operating on the highways of the state of Kansas. The Kansas statutes are based upon certain sections in Chapter 14 of the Uniform Vehicle Code as adopted by the National Committee on Uniform Traffic Laws and Ordinances. The Uniform Vehicle code was designed and advanced as a comprehensive guide or standard for state motor vehicle laws.

K.S.A. 8-1901 prescribes certain criminal penalties for violation of any of the restrictions on size and weight of motor vehicles contained in Article 19 of Chapter 8 of the Kansas Statutes Annotated. K.S.A. 1984 Supp. 8-1902, K.S.A. 8-1903, K.S.A. 1984 Supp. 8-1904, and K.S.A. 8-1905 establish limitations for the width, height, and length of motor vehicles and loads placed thereon. K.S.A. 8-1907 covers the subject of towing vehicles.

In this case the defendants were charged with the violation of K.S.A. 1984 Supp. 8-1908 which restricts the gross weight on wheels and axles. K.S.A. 8-1911 grants certain exemptions to the size and weight requirements and provides in part as follows:

"(a) The secretary of transportation with respect to highways under the secretary's jurisdiction and local authorities with respect to highways under their jurisdiction may, in their discretion, upon application in writing and good cause being shown therefor, issue a special permit in writing authorizing the applicant

to operate or move a vehicle or combination of vehicles of a size or weight of vehicle or load exceeding the maximum specified in this act or otherwise not in conformity with the provisions of this act upon any highway under the jurisdiction of the party granting such permit and for the maintenance of which said party is responsible: *Provided,* No permit shall be required to authorize the moving or operating upon any highway of farm tractors, combines, fertilizer dispensing equipment or other farm machinery, or machinery being transported to be used for terracing or soil or water conservation work upon farms, or *vehicles owned by counties, cities and other political subdivisions of the state,* unless such moving or operating occurs at any time from a half hour after sunset to a half hour before sunrise: *Provided,* The equipment referred to in the preceding proviso shall not be permitted to travel on interstate highways . . . ." (Emphasis supplied.)

It should be noted that the statute quoted above as it existed in October of 1983, when these criminal cases arose, provided that vehicles owned by counties, cities, and other political subdivisions of the state were not required to obtain a special permit or comply with the gross weight requirements except after hours of darkness, with a further limitation that such vehicles were not permitted to travel on interstate highways.

In 1984, K.S.A. 8-1911 was amended to provide specifically that any permit authorized under the section may be *for a single trip on a highway or route or for continuous operation on a highway or route.* We view this amendment as a clarification that special permits may be issued not only for a single trip but for continuous operation. The obvious effect of K.S.A. 8-1911 is to exempt vehicles owned by political subdivisions from the size and weight requirements of K.S.A. 1984 Supp. 8-1908.

The enforcement of vehicle weight laws is specifically covered in K.S.A. 8-1910, which authorizes any police officer or *properly designated Department of Revenue agent or employee* having reason to believe that the gross weight of a vehicle is unlawful to require the driver to stop and submit to a weighing. The defendants, in support of their first point, rely exclusively on the provisions of K.S.A. 8-1910(a) which require a police officer or agent of the Department of Revenue to have reason to believe that the gross weight of a vehicle is unlawful before having authority to have a driver stop and submit to a weighing of the vehicle. It should be noted, however, that K.S.A. 8-1910 is not the only statute pertaining to the enforcement of the various statutes concerning motor vehicles. In this regard, K.S.A. 66-1318 gives the Secretary of Revenue the authority to establish motor carrier inspection stations throughout the state for the

purpose of enforcing the laws relating to the size, weight, and load of motor vehicles.

K.S.A. 66-1319 provides that such agents or employees of the Department of Revenue as shall be designated by the Secretary of Revenue are vested with the power and authority of law enforcement officers in the execution of the duties imposed upon the Secretary of Revenue in enforcing the laws pertaining to carriers and motor vehicles. That statute provides specifically in part as follows:

"Any such agent or employee of the department of revenue and any officer of the state highway patrol are authorized and empowered to inspect any motor vehicle required by law to comply with any of the laws referred to in K.S.A. 66-1318, and rules and regulations relating thereto."

K.S.A. 66-1324 sheds additional light on the power of designated Department of Revenue agents to stop motor carriers and trucks and to require them to submit to inspection for compliance with the laws. The language used in that section is in part as follows:

"The secretary of revenue shall have authority to regulate the operation of motor carrier inspection stations under the secretary's supervision and control, including, when necessary to the enforcement of any laws relating to the operation or registration of motor carriers within this state, the authority to require all motor carriers, trucks or truck tractors to stop at any such inspection station to submit to inspection for compliance with any of the laws which the secretary is charged by this act with the duty to enforce."

At the very end of K.S.A. 66-1324, the legislative intent is made crystal clear that agents or employees of the Department of Revenue together with members of the state highway patrol may stop all motor carriers or trucks for the purpose of conducting spot checks to determine compliance with the statutory requirements. The language used in the statute is as follows:

"Nothing in this section shall be construed as prohibiting the secretary of revenue, any properly designated agent or employee of the department of revenue, the superintendent of the highway patrol or any member of the state highway patrol from stopping any or all motor carriers, trucks or truck tractors for the purpose of conducting spot checks to insure compliance with any state law relating to the regulation of motor carriers, trucks or truck tractors."

One additional statute which should be mentioned is K.S.A. 74-2108, which specifically authorizes members of the Kansas Highway Patrol to execute and enforce the laws of this state relating to public and private motor carriers and to require the

driver of vehicles owned or operated by such carriers to stop and submit such vehicle to an inspection to determine compliance with the laws of the state relating to public and private motor carriers of passengers or property.

In *State v. Williams*, 8 Kan. App. 2d 14, 648 P.2d 1156 (1982), it was held that a warrantless search of a motor vehicle authorized to transport property for hire which was stopped by an officer of the Kansas Highway Patrol solely to conduct a search under K.S.A. 74-2108(b) without any suspicion on the part of the officer that there was a violation of any laws of the state did not violate the Fourth Amendment to the United States Constitution or Section 15 of the Bill of Rights of the Kansas Constitution. The right of Kansas Highway Patrol Officers to make random spot checks was based upon the fact that motor carriers in Kansas are pervasively regulated and may be inspected to ensure compliance with safety regulations. The Court of Appeals opinion discusses the constitutional concepts involved and concludes that, under decisions of the United States Supreme Court, motor carriers licensed to operate on the highways of the state may be stopped on the highways for spot checks as to compliance for size and weight requirements. We agree with the holding of the Court of Appeals in *State v. Williams* that authorized law enforcement officers may stop motor carriers for the purpose of weight checks. In Kansas, motor carriers are pervasively regulated and the public has a substantial interest which must be protected. Trucks which transport large cargos present a substantial hazard if not operated in a safe condition. When the driver of a motor carrier operates on a public highway *per se* he does so with the knowledge that his property will be inspected from time to time. *Cf. United States v. Biswell*, 406 U.S. 311, 32 L.Ed.2d 87, 92 S.Ct. 1593 (1972). Such inspections do not violate either the Fourth Amendment to the United States Constitution or Section 15 of the Bill of Rights of the Kansas Constitution.

K.S.A. 8-1910(d) provides:

"The secretary of revenue is hereby authorized to designate certain department of revenue employees upon each of whom there is hereby conferred the authority of a police officer to control, direct and to weigh traffic on the highways, and to make arrests for violations of the vehicle laws relating to the size, weight and load of vehicles and combinations of vehicles."

This section, together with the other statutes mentioned here-

tofore, gives the same authority to Department of Revenue motor carrier inspection agents as is given specifically to the highway patrol in K.S.A. 74-2108 (b). From the statutes and case law cited above, we have concluded that designated agents of the Kansas Department of Revenue have the authority to stop motor carriers for spot checks as to their compliance with weight limitations provided under K.S.A. 1984 Supp. 8-1908 without prior knowledge that a violation exists. We thus reject the defendants' first point on the appeal.

The defendants' second point on the appeal is that the exemption of county owned trash trucks from the weight requirements of K.S.A. 1984 Supp. 8-1908 violates the defendants' right to equal protection of the laws under the United States and Kansas Constitutions. Stated simply, the defendants argue that the exemption of county vehicles under K.S.A. 8-1911 permits employees of the Shawnee County Refuse Department to operate overweight vehicles and enjoy complete immunity from the law. Counsel for the defendants takes the position that Shawnee County refuse trucks are in no way connected with highway construction projects and that the Shawnee County Refuse Department is a county owned business in competition with private industry made up of a large number of private haulers who do not have the additional competitive edge which the county enjoys by its exemption. Defendants argue that this exemption allows the county to purchase substantially larger container trucks which haul a much larger and heavier load requiring fewer trips to the dump which gives the county business both a physical and economic advantage. This, the defendants maintain, constitutes an unlawful and invidious discrimination. Based upon this reasoning, the defendants take the position that K.S.A. 1984 Supp. 8-1908 is unconstitutional and a private trash hauler cannot legally be prosecuted for violation of the weight limitations contained therein.

The State takes the position that a classification of motor carriers and trucks which makes a distinction between private vehicles and publicly owned vehicles is a legitimate classification and does not violate equal protection of the laws. We should first consider the test which must be applied to determine whether a statutory classification violates equal protection of the laws. The reasonable basis test is the yardstick under which a

statute must be measured to determine whether or not there has been a violation of equal protection of the laws. The reasonable basis test was originally set forth in *McGowan v. Maryland,* 366 U.S. 420, 425-26, 6 L.Ed. 2d 393, 81 S.Ct. 1101 (1961), as follows:

"The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Where a statute is attacked on the basis that it denies equal protection of the laws, the statute is cloaked with a presumption of constitutionality. Such being the case, the burden of proof falls on the one attacking the statute to sustain the burden of proof. *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 78-79, 55 L.Ed. 369, 31 S. Ct. 337 (1911); *Henry v. Bauder,* 213 Kan. 751, 753, 518 P.2d 362 (1974); *Gumbhir v. Kansas State Board of Pharmacy,* 231 Kan. 507, 519, 646 P.2d 1078 (1982), *cert. denied* 459 U.S. 1103 (1983).

In *Dandridge v. Williams,* 397 U.S. 471, 25 L.Ed. 2d 491, 90 S.Ct. 1153, *reh. denied* 398 U.S. 914 (1970), it was stated:

"If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.' *Lindsley v. National Carbonic Gas Co.,* 220 U.S. 61, 78." (p. 485.)

In *Henry v. Bauder,* 213 Kan. at 753, this court observed:

"A classification employed in the exercise of police power cannot be made arbitrarily. Any distinctions inherent in a particular classification must furnish a proper and reasonable basis for such a classification. The concept of equality of all citizens under the law is, of course, basic to our free society. We have stated that classifications may not be created arbitrarily, discriminatorily or unreasonably, or the principle of equality would be violated. There must be some difference in character, condition, or situation, to justify distinction, and this difference must bear a just and proper relation to the proposed classification and regulation; otherwise, the classification is forced and unreal, and greater burdens are, in fact, imposed on some than on others of the same desert."

In *Manzanares v. Bell,* 214 Kan. 589, 612, 522 P.2d 1291 (1974), we find the following comments:

"It should be noted that this court is not made the superintendent of legislative activity under principles of equal protection. (*Griswold v. Connecticut,* 381 U.S. 479, 14 L.Ed. 2d 510, 85 S.Ct. 1678.) Equal protection principles do not restrain

the normal exercise of governmental power, but only abuse in the exertion of such authority. The principle of equal protection is not offended against simply because the exercise of the power may result in some inequality. (*Louisville & Nashville R.R. v. Melton,* 218 Kan. 36, 54 L.Ed. 921, 30 S.Ct. 676.) There is no precise application of the rule of reasonableness in classifying, and equality permits many practical inequalities. There need not be an exact exclusion or inclusion of persons and things. (*Magoun v. Illinois Trust & Savings Bank,* 170 U.S. 283, 42 L.Ed. 1037, 18 S.Ct. 594.) The state enjoys a wide range of discretion in distinguishing, selecting, and classifying, and it is sufficient if a classification is practical and not palpably arbitrary. (*Orient Insurance Company v. Daggs,* 172 U.S. 557, 43 L.Ed. 552, 19 S.Ct. 281; *Shelton v. Phalen,* 214 Kan. 54, 519 P.2d 754; *State v. Weathers,* [205 Kan. 329, 469 P.2d 292]; *Tri-State Hotel Co. v. Londerholm,* 195 Kan. 748, 408 P.2d 877; *Martin v. Davis,* 187 Kan. 473, 357 P.2d 782, app. dismissed 368 U.S. 25, 7 L.Ed. 2d 5, 82 S.Ct. 1; *Board of County Comm'rs v. Robb,* 166 Kan. 122, 199 P.2d 530.) '. . . To be able to find fault with a law is not to demonstrate its invalidity. It may seem unjust and oppressive, yet be free from judicial interference. The problems of government are practical ones and may justify, if they do not require, rough accommodations . . . . What is best is not always discernible; the wisdom of any choice may be disputed or condemned. Mere errors of government are not subject to . . . judicial review. . . .' (*Metropolis Theatre Co. v. Chicago,* 228 U.S. 61, 69, 70, 57 L.Ed. 730, 734, 33 S.Ct. 441, 443.)

. . . .

"In the areas of economic and social legislation, a statutory plan does not violate the equal protection clause merely because the classifications contained therein are imperfect. (*Village of Belle Terre v. Boraas,* 416 U.S. 1, 39 L.Ed. 2d 797, 94 S.Ct. 1536, 42 L.W. 4475; *Jefferson v. Hackney,* 406 U.S. 535, 32 L.Ed. 2d 285, 92 S.Ct. 1724.) Nor does the equal protection clause require a state to 'choose between attacking every aspect of a problem or not attacking the problem at all . . .' (*Dandridge v. Williams,* 397 U.S. 471, 487, 25 L.Ed. 2d 491, 503, 90 S.Ct. 1153, 1162.)" (pp. 612-15).

This subject is also discussed in some depth in *State ex rel. Schneider v. Liggett,* 223 Kan. 610, 576 P.2d 221 (1978).

In *State v. Shouse,* 8 Kan. App. 2d 483, 660 P.2d 970 (1983), the defendant was convicted of driving an overweight truck in violation of K.S.A. 8-1909. Following his conviction, he appealed challenging the constitutionality of the statute on the basis that 8-1909 denied him equal protection of the law because it exempted trucks carrying certain cargos but not his cargo of logs. Under the statute, a truck was exempt from the weight requirements where it was used exclusively for the transportation of sand, salt, and other materials, when such vehicles were used for transportation to a construction site, highway maintenance, or storage facility. The defendant Shouse argued that the statute impermissibly distinguished among motor carriers on the basis

of the content of the load, and thus violated the guarantee of equal protection. The Court of Appeals rejected this contention, holding that equal protection of the laws was not violated.

There are a number of cases in other jurisdictions where the same basic issue raised in this case was presented for determination. The general rule to be applied in determining the constitutionality of an exemption to statutory limitations on the weight, size, and load of motor carriers and trucks is stated as follows in 7A Am. Jur. 2d, Automobiles and Highway Traffic § 196:

"It has been held or recognized in numerous cases, either expressly or by implication, that the state has the power to enact and enforce reasonable and nondiscriminatory regulations limiting the weight of vehicles or their loads with respect to their use of the highways. The basis for this exercise of the police power is the protection of the highways, for the construction and maintenance of which the state is responsible.

"To be valid, state regulations of the weight of a motor vehicle or the load thereon to be transported must not be unreasonable, arbitrary, or discriminatory in their provisions or operation. But the reasonableness of various types and degrees of statewide weight limitations imposed by states has been usually upheld, the general view being that the states have wide legislative discretion in the matter. In numerous cases upholding weight limitations, the courts have rejected contentions of illegal discrimination with respect to classifications differentiating between different types of vehicles, vehicles used in different types of business, freight motor carriers and railroads, trucks and passenger buses, private vehicles and those licensed as common carriers, *private vehicles and government vehicles* . . . and the like." (Emphasis supplied.)

There is an annotation in 75 A.L.R. 2d 376 on the power of a governmental unit to limit weight of a vehicle or its load with respect to the use of streets or highways. The annotation cites many cases which recognize that although, constitutionally speaking, the power of government to impose weight limitations upon vehicles using the highways is limited to nondiscriminatory exercise thereof, contentions that many different kinds of classifications employed constituted invalid discrimination have been almost universally rejected. The cases which involve discrimination as to weight restrictions between private vehicles and government owned vehicles hold universally that such a classification is valid and does not violate equal protection of the laws. The cases have consistently held that way for more than fifty years. In the following cases, a state statute restricting the size and weight of trucks was held not to be invalid because

vehicles owned and used by a state, county, or city were exempt from the statute. *State Ex Rel. Daniel v. John P. Nutt Co., Inc.,* 180 S.C. 19, 185 S.E. 25 (1935); *Whitney v. Fife, Judge,* 270 Ky. 434, 109 S.W.2d 832 (1937); *State v. Seraphine,* 266 Wis. 118, 62 N.W. 2d 403 (1954); *Department of Pub. Safety v. Freeman Ready-Mix Co.,* 292 Ala. 380, 295 So. 2d 242 (1974). The rationale of each of these cases has been that a statute limiting weight or load of motor vehicles is not discriminatory as class legislation although it exempts vehicles owned by governmental units, because such classification is based on independent and natural reasons. There are some decisions involving classifications of various types of private motor vehicles where the classification has been upheld and other cases where a classification has been held as discriminatory and a violation of the equal protection clause. Cases which uphold classifications based upon the particular cargo being transported are *Gutridge v. Com. of Va.,* 532 F. Supp. 533 (E.D. Va. 1982), and *Hoover Motor Exp. Co. v. Fort,* 167 Tenn. 628, 72 S.W. 2d 1052 (1934). Cases which have held statutes unconstitutional which discriminate between different types of privately owned motor carriers are *Sterling H. Nelson & Sons, Inc. v. Bender,* 95 Idaho 813, 520 P.2d 860 (1974), and *State v. Amyot,* 119 N.H. 671, 407 A.2d 812 (1979).

We have concluded that the trial court was correct in holding that the exemption of government owned vehicles from the weight limitations of K.S.A. 1984 Supp. 8-1908 did not constitute an invidious discrimination in violation of equal protection of the laws. Political subdivisions are not the same as private corporations. It has been said that a county is an arm or agent of the state. *Wommack v. Lesh,* 180 Kan. 548, 551, 305 P.2d 854 (1957). It cannot be denied that counties are by statute vested with many powers and duties of a governmental nature which distinguish them from private citizens. For examples, counties may have the obligation to build and maintain county roads and bridges (K.S.A. 68-501 *et seq.*); construct and maintain parks, lakes, and recreational grounds (K.S.A. 19-2819, 19-2834, and 19-2855); maintain homes for the aged (K.S.A. 19-2106); provide ambulance services for the people in the county (K.S.A. 1984 Supp. 19-261); construct and maintain community mental health centers (K.S.A. 19-4001) and provide for youth camps (K.S.A. 19-2643).

Furthermore, counties by statute are required to organize county solid waste management committees and develop plans for management of solid waste within the county or city. (K.S.A. 65-3405). K.S.A. 65-3410 authorizes counties or cities to provide for the collection and disposal of solid wastes. It is obvious that with all of these responsibilities and many others counties must purchase and maintain real property, materials, and equipment necessary to perform a wide variety of services to the public. County employees keep county roads free from fallen trees and remove abandoned motor vehicles which present a threat to the public safety. We think it clear that classifications based upon a distinction between private vehicles and vehicles owned by political subdivisions may have a rational basis and are not discriminatory so as to violate equal protection of the laws. We agree with the trial court in its holding that the exemption of government owned vehicles from the weight limitations on trucks does not violate equal protection of the law under the United States and Kansas Constitutions.

In conclusion, however, we wish to emphasize that this decision does not preclude a private trash hauler from seeking the issuance of a special permit to enable it to use larger and heavier trucks for the purpose of providing better and less expensive trash hauling service to the public. There is no evidence in this case to show that the private trash haulers have ever attempted to obtain such a special permit. We only hold in this case that the statutory exemption provided to government owned vehicles under K.S.A. 8-1911 does not violate the defendants' right to equal protection of the laws.

The judgment of the district court is affirmed.

LOCKETT, J. concurring in part and dissenting in part. I concur with the majority that the Department of Revenue agents had the right to set up a temporary scale position outside the landfill and to stop the trash trucks and weigh them.

I also agree that the majority opinion correctly states the right of the county-owned vehicles to be exempt from weight restrictions when those vehicles are performing a governmental function such as maintenance and repair of the highway or fire and police protection. When a governmental entity's vehicles are performing a governmental function there is a legitimate constitutional basis for the classification.

A governmental entity performs functions of three kinds: (1) governmental or public duties as the representative of the state, exercised for the benefit of the public, and not for the governmental entity; (2) governmental duties exercised for the benefit of the governmental entity as well as the public; and (3) business or commercial enterprises.

Here the county was not performing a governmental function when collecting trash. It was competing with privately-owned trash companies for the fees to be gained by hauling trash. A statute which allows a governmental trash truck to be exempt from the weight restrictions placed on privately-owned trash trucks, when the governmental entity is competing for fees in a proprietary function, gives the governmental entity an unfair edge in competition.

When a governmental entity engages in an activity of a business nature, such as is generally engaged in by individuals or private corporations, rather than one of a governmental nature, it acts as a corporation, and not in its sovereign capacity. *City of Logansport v. Public Service Comm.*, 202 Ind. 523, 177 N.E. 249 (1931), 76 A.L.R. 838; *Greenwood v. City of Lincoln*, 156 Neb. 142, 55 N.W.2d 343 (1952), 34 A.L.R.2d 1203.

Accordingly, a governmental entity, when given authority to perform a proprietary function such as engaging in a business enterprise of collecting trash, is expected to perform under rules and regulations like those pursued by private persons or corporations engaged in similar functions and to have full power to perform in the efficient manner of a private person. *Seaboard Air Line R. Co. v. County of Crisp of State of Ga.*, 280 F.2d 873 (5th Cir. 1960), *cert. den.* 364 U.S. 942 (1961); 56 Am. Jur. 2d, Municipal Corporations § 211.

Where a statute exempts county-owned trash trucks from the weight requirements placed on private trash haulers, that statute violates the defendants' rights to equal protection of the laws under the United States and Kansas Constitutions. It is not a legitimate public interest to allow a governmental entity an unfair advantage over private individuals or corporations when both are engaged in private business.

HOLMES, J., joins the foregoing concurring and dissenting opinion.