SOUTHEASTERN GREYHOUND LINES *v.* DUNLAP *et al.*

(*Nashville,* December Term, 1941.)

Opinion filed April 4, 1942.

W. M. Fuqua, of Nashville, for complainant.

Lon P. McFarland, of Lebanon, and Thos. H. Peebles, Jr., of Columbia, for Porter Dunlap and others.

Hume, Howard, Davis & Gale, of Nashville, for Interurban Co.

Mr. Special Justice Alan M. Prewitt delivered the opinion of the Court.

This cause comes here on appeal by the Southeastern Greyhound Lines from a decree of the chancery court, part two, of Davidson County, in which the petition for writs of *certiorari* and *supersedeas* to set aside an order

of the defendants Dunlap et al., composing the Railroad and Public Utilities Commission of Tennessee, was denied. This order directed the defendant Nashville-Franklin Railway to substitute busses for the electric trolley service which it operated between Nashville and Franklin, and granted to the railway the necessary certificate of convenience and necessity to make this substitution. The certificate is from Nashville over U. S. Highway 31 to Franklin and thence beyond Franklin over an unnamed route to Hillsboro, Tennessee. The railway company has since 1909 owned and operated an electric railway between Nashville and Franklin, with its trolley track along or near to the Franklin Pike, Highway No. 31, and its cars upon reaching Nashville came up the street car tracks and made a loop through the city, going through the old transfer station. The extension of the certificate beyond Franklin to Hillsboro is not questioned in this proceeding, because neither the petitioner, Southeastern Greyhound Lines, nor the defendant railway, has ever maintained any passenger services to this village. The certificate granted in the same order by the commission to the Southeastern Greyhound Lines to operate over the Hillsboro Pike between Nashville and Franklin is not questioned.

The Southeastern Greyhound Lines hold a certificate from Nashville to Franklin over U. S. Highway No. 31 and from Nashville to Alabama State Line, via Franklin, Columbia, Mount Pleasant, and Lawrenceburg. The controversy arose when the railway company was faced with the necessity of discontinuing its passenger operations when the street car system of Nashville was ordered abandoned and it would thereafter have no way into Nashville with its trolley cars, and thereupon this pro-

ceeding followed, with the order above referred to being entered to substitute busses.

The petitioner Greyhound Lines protested before the commission and, when the order was entered, filed its petition for *certiorari* and *supersedeas* and this appeal, because it held a certificate from Nashville to Franklin on U. S. Highway No. 31. The petitioner took the position that no other certificate over this route could be legally granted unless and until it be given an opportunity to handle this business of about one hundred and fifty thousand passengers annually which would have to be handled by bus after the Nashville-Franklin Railway operation stopped.

The railway commenced its operations in 1909, carrying passengers between Nashville and Franklin and intermediate points, and has maintained this service continuously with approximately twenty-four trips per day during said period of about thirty-two years. In 1924, the predecessors in interest of the Southeastern Greyhound Lines commenced operations from Nashville to points south, going through Franklin on the Franklin Pike to the Alabama State Line. It seems that none of these busses are or ever have been local busses to Franklin.

On September 30, 1929, a certificate of convenience and necessity was issued to the Union Transfer Company, the predecessor in interest of the Southeastern Greyhound Lines. The Nashville-Franklin Railway protested the issuance of this certificate and urged that it be limited so as to require the certificate holder to operate with closed doors between Nashville and Franklin, but no such provision was inserted in the certificate.

It is conceded that this certificate of convenience and necessity constitutes a grant of a franchise right by the State, acting through the Railroad and Public Utilities Commission, and the question before the Court is, just what rights the Greyhound Lines have under this franchise. It is not urged here by counsel for the Greyhound Lines that the petitioner has been granted an absolute right to institute a specialized local service to Franklin, but, rather, it is the contention of the Greyhound Lines that under Section 10 of the Tennessee Motor Vehicle Regulatory Act and Amendment of 1933, the Greyhound Lines have the right to be given the opportunity of serving this territory without competition. Said section provides as follows:

"Sec. 10. No motor carrier authorized under the provisions of this Act to operate between points within this State shall abandon or discontinue any service established under the provisions of this Act without an order of the Commission therefor, which said order shall be granted by the Commission only after hearing upon due notice; providing, however, the Commission may, as an emergency measure and without hearing, authorize the abandonment or discontinuance of any service for periods of not more than fifteen days, by reason of physical condition of the highways or other sufficient reason.

"The Commission may at any time, for good cause, suspend any certificate of convenience and necessity, interstate permit or contract haulers permit; and, upon ten days' notice to the holder of any certificate of convenience and necessity, interstate permit or contract hauler's permit and after an opportunity to be heard, said Commission may for proper cause revoke, alter or amend any certificate of convenience and necessity, inter-

state permit or contract hauler's permit issued under the provisions of this Act. Provided, that on finding of the Commission that any motor carriers operating between points within this State does not give convenient efficient service in accordance with the orders of the Commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is cancelled or revoked or a new certificate granted to some other motor carrier over the same route or routes.''

It is insisted by the commission and also by the railway company that this section was intended only in cases where it appeared to be necessary to take steps to cancel the right given the holder of a franchise and provide the method for so doing.

■ It cannot be said that the State, acting through the Railroad and Public Utilities Commission, had in mind the granting to any person, firm, or corporation, the exclusive right to use the public highways of the State; rather, the certificate of convenience and necessity is looked upon more as a license or privilege, revocable upon the happening of certain events.

Section 21 of said Motor Vehicle Act provides as follows: ''Sec. 21. It is hereby declared that the legislation herein contained is enacted for the sole purpose of promoting and conserving the interest and convenience of the public by conferring upon the Railroad and Public Utilities Commission the power and authority, and making it the duty of such Commission, to supervise and regulate the transportation of persons and property by motor vehicle over or upon the public highways of this State, and to supervise and regulate certain businesses closely allied with such motor transportation, so as to

(1) regulate, foster, promote and preserve proper and economically sound transportation and authorize and permit proper co-ordination of all transportation facilities, (2) relieve existing and future undue burdens upon the highways arising by reason of their use by motor vehicles, (3) protect the welfare and safety of the traveling and shipping public in their use of the highways, and in their contact with the agencies of motor transportation and allied occupations, and (4) protect the property of the State in its highways from unreasonable, improper, or excessive use.''

In the *Binghamton Bridge case* (*In re Binghamton Bridge*), 3 Wall. 51, 75, 18 L. Ed., 137, the Court said: ''In the case of Charles River bridge, the rules of construction known to the English common law were adopted and applied in the interpretation of legislative grants, and the principle was recognized, that charters are to be construed most favorably to the State, and that in grants by the public nothing passes by implication. This court has repeatedly since reasserted the same doctrine; and the decisions in the several States are nearly all the same way. The principle is this: that all rights which are asserted against the State must be clearly defined, and not raised by inference or presumption; and if the charter is silent about a power, it does not exist.''

To like effect are *Turnpike Co. v. Davidson County*, 91 Tenn., 291, 18 S. W., 626, and *Turnpike Co. v. Montgomery County*, 100 Tenn., 417, 45 S. W., 345, 58 L. R. A., 155.

██ Of course, the legislature has full authority over the highways of the State and may lay out their routes and regulate their use, and it may likewise prescribe the conditions on which highways may be used for gain by carriers for hire.

■ It is also settled that the legislature may delegate its power to regulate highways to subordinate agencies such as the highway commissioner or the Railroad and Public Utilities Commission. *Johnson Freight Lines, Inc., v. Davis,* 174 Tenn., 51, 123 S. W. (2d) 820, 821.

In *Johnson Freight Lines, Inc., v. Davis, supra,* this Court said: "The certificates of convenience and necessity granted to the complainants expressed no exclusive authority and conferred no exclusive franchise for the operation of truck lines over the highways of the State. Such certificates did not protect the complainants from lawful competition."

See also *State ex rel. v. Cummings,* 130 Tenn., 566, 172 S. W., 290, L. R. A., 1915D, 274; *State Highway Department v. Mitchell's Heirs,* 142 Tenn., 58, 216 S. W., 336; *Liles* v. *Creveling,* 151 Tenn., 61, 268 S. W., 625; *Hoover Motor Express Co.* v. *Fort,* 167 Tenn., 628, 72 S. W. (2d), 1052.

It should be borne in mind that when the franchise was issued to the Greyhound Lines in 1929 by the Railroad and Public Utilities Commission that the Nashville-Franklin Railway had been in operation for many years, and so when petitioner received its certificate of convenience and necessity, it was charged with full knowledge of the existence and operation of the railway and knew that the railway carried passengers to the extent of probably one hundred and fifty thousand a year from Nashville to Franklin and return and also intermediate points. The effect of taking up the street car tracks in Nashville could only serve to impair the remaining rights and properties of the railway company. The latter company contends that in this proceedings the commission did not issue to it

a certificate to undertake an original enterprise, but rather the mode of serving the public in the territory mentioned was by way of substitution of busses instead of trolley cars, and it could well be observed that to all intents and purposes the railway company is carrying on the same line of business as it has been heretofore.

These matters were no doubt fully considered by the commission and are not to be controlled by the courts. It has been held by this Court that the utilities commission was an administrative body and not a court. See *In re Cumberland Power Co.*, 147 Tenn., 504, 249 S. W., 818; *McCollum* v. *Southern Bell Tel. & Tel. Co.*, 163 Tenn., 277, 43 S. W. (2d), 390. Many of the cases dealing with *certiorari* are cases which arise from inferior judicial tribunals and in such cases it is entirely proper for the courts to substitute their judgment for the judgment of the lower judicial tribunal, but it does not follow that the court should substitute its judgment for the judgment of an administrative body, being another constitutional branch of government. The commission sees and hears the witnesses and no doubt is familiar with the equipment and standing of the applicants for service.

In Ohio, that State has the following statute:

"Protection against Competition.

"The commission shall have the power, after notice and hearing, when the applicant requests a certificate to serve in a territory already served by a motor transportation company holding a certificate of public convenience and necessity from the commission, to grant a certificate only when the existing motor transportation company or companies serving such territory do not provide the service required or the particular kind of equipment necessary to furnish such service to the satisfaction of

the commission, and in all other cases, with or without hearing, to issue such certificates as prayed for.; or to refuse to issue the same, or to issue them for the partial exercise only of the privileges sought, or to issue such certificates for the use of certain kinds of equipment and for the handling of certain kinds of material or merchandise over such routes, and may attach to the exercise of the rights granted by such certificates, such terms and conditions as, in its judgment, the public convenience and necessity may require." Ohio Code, Section 614-87. It can hardly be doubted that this statute contains a specific prohibition against the granting of competing certificates.

However, the Supreme Court of Ohio upheld and sustained the Ohio Public Service Commission in granting an interurban the right to substitute motor service for its trolley operations. *Gilbert et al.* v. *Public Utilities Commission of Ohio,* 131 Ohio St. 392, 3 N. E. (2d), 46, 48. In the *Gilbert case, supra,* the Court said: "The commission also took cognizance of other persuasive factors. It considered the long-time operation of the affiliated electric railway lines between Dayton and Xenia and Xenia and Springfield, and their relationship to the transportation company. It regarded the prospective operation of the transportation company between Springfield and Dayton, via Xenia, not as a new and independent project, but in the nature of an improved and more modern substitute for the former electric service over practically the identical route."

In Illinois the franchises given to utilities are considered more or less monopolistic, but such is not the rule in most states and certainly not in Tennessee. We are therefore of the opinion that Chapter 119 of the

Acts of 1933 does not make the certificates granted thereunder exclusive, and that such certificates, being grants from the State, the same are not exclusive. We are further of the opinion that Section 10 of the act only refers to suspension, revocation, or cancellation of the certificate after a failure to give service, and has nothing to do with the issuance of an original certificate unless an original certificate is issued to a new carrier as a result of the cancellation, revocation or amendment of an existing certificate. We are further of the opinion that where the existing certificate is not altered, amended, or revoked, as in the instant case, this section has no application.

██ We are further of the opinion that the Nashville-Franklin Railway in substituting busses for trolley cars is not engaging in a new and independent project, but in the nature of an improvement and a more modern substitute for the former electric cars over practically the same route.

██ The Court has not found it necessary to consider the evidence as it would have done, if there was involved the grant of an original privilege to Nashville-Franklin Railway. Even in such a case, the commission has a very broad discretion.

██ ██ In the case before us, as stated, the commission has merely approved the substitution by the railway of a new means of transportation in the exercise of an old privilege. Such a change by a rail carrier to improved instrumentalities, though it results in competitive motor transportation, is sanctioned even in a jurisdiction where the monopolistic theory of such transportation prevails. *Ohio case, supra.* Where this transportation is competitive within the discretion of the commission

(as in Tennessee), it would require exceptional circumstances to induce this Court to question the commission's permission to a carrier merely to change its motive power.

It therefore results that we find no error in the decree of the chancellor and it is affirmed.