CONTINENTAL TENNESSEE LINES, Inc. and Central Bus Lines, Inc., *v.* HAMMOND FOWLER *et al.*

(*Nashville,* December Term, 1955.)

Opinion filed February 3, 1956.

Farris, Evans & Evans, of Nashville, for appellants.

Hooker, Keeble, Dodson & Harris, of Nashville, and Anderson & Shepp, of Knoxville, for appellees.

Alfred T. MacFarland, General Counsel, and Harold Seligman, Assistant General Counsel, both of Nashville, for appellee Railroad & Public Utilities Commission.

Mr. Justice Prewitt delivered the opinion of the Court.

In the outset it will be observed appellees have filed a motion to transfer this cause to the Court of Appeals.

Section 30, Chapter 162, Public Acts of 1953 provide as follows:

"Appeals. Be it further enacted, That an aggrieved party may secure a review of any final judgment of the Chancery Court under this Act, upon giving bond as required by law in other chancery cases, by direct appeal to the Supreme Court, notwithstanding the provisions of any other statute to the contrary. In the Supreme Court the cause shall be heard upon the transcript of the record before the Chancery Court; and the said cause shall be advanced upon the docket of the Supreme Court as one of precedence and heard as promptly as practicable."

The appellees in support of the motion rely on our recent case of *Woodroof* v. *City of Nashville,* 183 Tenn. 483, 484, 192 S. W. (2d) 1013.

This Act, that is, Chapter 162, Public Acts of 1953, is not a part of the same statute as Section 10618. In the Woodroof case supra the conflicting provision was a part of the same statute of which Section 10618 is a part. Here the Act is a subsequent expression by the legislature, enacted twenty-eight years after Section 10618. In this latter statute provision is made for a direct appeal to this Court notwithstanding the provisions of any other statutes to the contrary.

In January, 1954, in a case involving the same parties this Court sustained the motion to transfer. However, the words of the transfer were as follows:

"In conference, the full Court has carefully considered the motion to transfer to the Court of Appeals, and is of the opinion that in view of the peculiar history of this particular case, that the Court should adhere to the rule stated in *Woodroof*

v. *City of Nashville*, 183 Tenn. 483 [192 S. W. (2d) 1013], since the Court of Appeals has already heard and considered a companion case which was consolidated and heard by the Chancellor with this case. The motion to transfer is accordingly granted and the case is transferred to the Court of Appeals.''

This was based upon a peculiar situation then before the Court. This Chapter 162, Sections 30 and 31 plainly state that the direct appeal is from the Chancery Court to the Supreme Court. The motion of the appellees is overruled.

Now we come to a consideration of the case on its merits.

The Public Service Commission ruled that Central Bus Lines Inc., and its successor Continental Tennessee Lines, Inc., had abandoned its certificate of convenience to operate a bus line over the highway from Sparta to Crossville. This was taken to the Chancery Court of Davidson County by certiorari, where the Chancellor, in an exhaustive opinion, upheld the action of the Commission, holding that there was material evidence to sustain the Commission.

The petition seeks to reverse the decree of the Chancellor upholding the Commission.

The case turns entirely upon the question as to whether or not Certificate 9-F was properly revoked since it is essential to the proposed schedule.

The facts with reference to this certificate are not in dispute. It was first identified as such on May 13, 1932, and Central exercised it until about November 8, 1935, when the Commission granted a stay order of 90 days because of the condition of the highway. Several extensions were granted.

On August 30, 1947, the Commission entered an order approving the merger of Consolidated with Central and

transferring Certificate No. 9-F to Central Bus Lines, Inc., but no service was instituted between Sparta and Crossville and no stay order was sought or granted.

On June 20, 1953, Central issued a schedule circular for the proposed Schedule No. 5-A from Knoxville to Nashville via Sparta and Crossville, to begin on July 24, 1952. This appears to be the first offer of service between Sparta and Crossville from November 8, 1935, until June 20, 1952.

When the matter was brought to the attention of the Chairman of the Commission, he addressed a letter to Central's manager on July 23, 1952, pointing out that there was serious doubt as to Central's right to operate under said Certificate on account of the fact that there had been an abandonment of the service for more than sixteen years, and furthermore that the proposed schedule was in conflict with limitations heretofore placed by the Commission upon Central's operating rights between Crossville and Knoxville.

In spite of this it seems that Central commenced operations over the new route on July 24, 1952, and continued until July 31, 1952, when an order was entered by the Commission upon Central's petition for approval. After a full hearing this petition was denied.

Central filed a motion to set aside the order and the case was reopened and the petition was again denied. Central's petition for certiorari was filed in the Chancery Court of Davidson County, Tennessee, on April 13, 1954.

Did the Commission have a right to enter this revocation and did the Commission comply with procedural requirements of the statute?

The Code Section reads as follows:

"5501.10.  Abandonment of service; restrictions;

revocation or amendment of certificates or permits. —No motor carrier authorized under the provisions of this act to operate between points within this state shall abandon or discontinue any service established under the provisions of this act without an order of the commission therefor, which said order shall be granted by the commission only after hearing upon due notice; providing, however, the commission may, as an emergency measure and without hearing, authorize the abandonment or discontinuance of any service for periods of not more than fifteen days, by reason of physical condition of the highways or other sufficient reason.

"The commission may at any time, for good cause, suspend any certificate of convenience and necessity, interstate permit or contract hauler's permit; and upon ten days' notice to the holder of any certificate of convenience and necessity, interstate permit or contract hauler's permit and after an opportunity to be heard, said commission may for proper cause revoke, alter or amend any certificate of convenience and necessity, interstate permit or contract hauler's permit issued under the provisions of this act. Provided, that on finding of the commission that any motor carrier operating between points within this state does not give convenient efficient service in accordance with the orders of the commission, such motor carrier shall be given a reasonable time, not more than sixty days, to provide such service before any existing certificate is canceled or revoked or a new certificate granted to some other motor carrier over the same route or routes. (1933, ch. 119, sec. 10.)"

■ It seems to be a general rule that certificates of this character may be lost by abandonment. *New York Electric Lines Co.* v. *Empire City Subway Co.,* 235 U. S. 179, 35 S. Ct. 72, 59 L. Ed. 184.

After a review of the evidence this Court agrees with the findings of the Special Chancellor, who has written a full and exhaustive opinion on this question in which we fully concur.

■ ■ We find, as did the Special Chancellor, that there is much material evidence to support the Commission's finding. See *Hoover Motor Express Co.* v. *Railroad & Public Utilities Commission,* 195 Tenn. 593, 261 S. W. (2d) 233, and *Tennessee Cartage Co.* v. *Pharr,* 184 Tenn. 414, 199 S. W. (2d) 119, where it was held that the scope of judicial review is limited to a determination of whether or not there was substantial or material evidence to support the Commission's finding.

Central contends that even if cause for revocation existed, no certificate may be cancelled except in accordance with the procedural requirements of the second paragraph of Code Section 5501.10, above.

Again we agree with the lower court that the history of the case makes it clear that Central had notice from and after July 23, 1953.

Central further insists, that in addition to the hearing, it was entitled to an opportunity to provide service as contemplated by Code Section 5501.10.

■ This provision refers to a motor carrier operating between points, as contrasted with a motor carrier authorized to operate between points.

■ We think that it was the intention of the statute, that where there was an abandonment, especially over this long period of time, that the Commission had a right to enter the order of revocation.

We have considered all of the assignments of error, find them without merit and the decree of the Chancellor is affirmed.