ASSOCIATED TRANSPORT, INC., et al.

*v.*

HAMMOND FOWLER et al.

(*Nashville,* December Term, 1959.)

Opinion filed June 6, 1960.

George Shuff, Nashville, for Tennessee Public Service Commission, appellant.

Blaine Buchanan, Chattanooga, for appellant, intervenors.

Asquith & Asquith, Knoxville, Hooker, Keeble, Dodson & Harris, Nashville, for appellees.

644

MR. JUSTICE BURNETT delivered the opinion of the Court.

This case involves the interpretation of sub-section (d) as construed with sub-section (a) of Section 65-1507, T.C.A. The Associated Transport, Inc., and Tennessee Valley Express, Inc., filed a petition with the Tennessee Service Commission to transfer a number of certificates of convenience and necessity which had been granted to transport freight for hire in intrastate to the Associated Transport, Inc. The Tennessee Valley Express, Inc., had entered into an agreement with Associated Transport to purchase said certificates. The Commission by a majority opinion denied the transfer of these certificates, and on petition for certiorari to the Chancery Court that court reversed the Commission and in effect adopted the contention of the dissent to the majority of the Commission. Able briefs have been filed, and after reading these some two or three times as well as the authorities and statutes and making an independent investigation we have the matter for disposition.

Sub-division (a) of Section 65-1507, T.C.A., provides for the issuance of a certificate of convenience and necessity for motor carriers to operate as common carriers on the highways of this State. It also provides that, if the Commission shall find that public convenience and necessity will be promoted by the granting of such a certificate over the highways in question, the Commission may issue a certificate, if the facts call for it. Then in this sub-division it is provided that in determining whether or not such a certificate shall issue the Commission shall give reasonable consideration "to the transportation service being furnished * * * in the territory in which the applicant proposes to operate, the service to be rendered and/or capable of being rendered by the applicant, the financial condition and character of the applicant, the character of the highways over which said applicant proposes to operate and the effect thereon and upon the traveling public using said highways, the public demand or need for the service proposed, the likelihood of the proposed service being permanent and continuous, the effect which such proposed transportation service may have upon other transportation service being rendered, and all other pertinent facts."

We now come to consideration of subdivision (d) of this Section and its relationship and application to sub-division (a), as above quoted from. Sub-division (d) provides that after a certificate of convenience and necessity has been granted and it has been sold or transferred, assigned or leased, etc., that then upon the application being made to the Commission "and if the commission shall be of the opinion that the purchaser thereof *is in all respects qualified* under the provisions of this chapter, to conduct the business of a motor carrier

within the meaning thereof," then it is provided that the original certificate or part of it shall be transferred to the purchaser. Then by the Acts of 1959 another sentence was added to this sub-division which is not pertinent herein.

■■ The question involved in this lawsuit is, what is the meaning and purpose of the language of sub-section (d) last quoted which was underscored by us; what is the meaning "is in all respects qualified under the provisions of this chapter" under the facts of the instant case? In determining an answer to this question it is obviously necessary that we must go to the books or dictionary for definitions of the underscored language. In the first place take the word "all" which of course in its ordinary everyday meaning, as we must apply it as used by the Legislature herein, is a very comprehensive word and probably the most comprehensive that can be found in the English language, and when used as here it certainly to our minds means everyone, or the whole number of particulars; the whole number. Then let us take the word "respects", which according to Webster's New International Dictionary, 2nd Ed., means "5. A point regarded; as a particular; a detail; a point of view; as, in this respect; in any respect; in all respects." We then come to the word "qualified" defined by the same dictionary as here used means "having complied with the specific requirements or precedent conditions for an office, appointment, employment, etc." Thus it is when we take the language of this statute above quoted with these obvious meanings or definitions that the Legislature must have had in mind when using this language, it is obvious what the statute meant. The clear meaning thereof was, before these certificates were sold

etc. or could be transferred and recognized as operative in the purchaser, that they should convince the Commission of their qualifications to operate under these certificates of convenience and necessity just as they would if they had applied for the certificate under condition (a) of the Act, that is, that the kind of service they could and were capable of rendering, their financial condition, character of the applicant, character of the highways, effect thereon on the traveling public, public demand and these various things, as quoted in the outset hereof. If it was not the purpose of the Legislature in meaning this, why did they use words that ones purchasing these should be "in all respects qualified" under the provisions of this chapter? The qualifications given for one are those enumerated in sub-section (a) above quoted. It certainly could not have been the intention of the Legislature in enacting the Act we have been quoting from to put the purchaser of these certificates in any better or higher position than an applicant would have had to have for the positions for the certificates in the first instance. No discretionary right is taken away from the Commission that is given it by sub-division (a) above to grant a certificate by the language of sub-division (d) so long as the Commission does not act arbitrarily or capriciously under the evidence before it in granting or denying the transfer of these certificates. The Act merely provides that if the purchaser "is in all respects qualified" then the Commission must grant the transfer. The only way the courts can enter into the granting or denial of such a transfer is by the showing that the Commission is acting arbitrarily or capriciously in the matter. *Hoover Motor Express Co. v. Railroad & Public Utilities Commission,* 195 Tenn. 593, 261 S.W.2d 233. We held in

this opinion likewise that the action of the Commission giving or withholding certificates for convenience and necessity is in the first instance an administrative function. We think that this has been the history of these Commission acts. Otherwise, what is the necessity of having the Commission? Why not just proceed to the court in the first instance? We likewise held in the Hoover case, following precedent as far back as we can remember, that the weight to be given these questions on particular evidence is a matter peculiarly within the Commission, the trier of the facts.

The respondents to this petition for certiorari as well as the Chancellor in his opinion take an opposite position as to the meaning of this statute, and very ably, almost persuasively, argue that, if the Legislature had meant what we have concluded is the meaning hereinbefore, they would have spelled it out in so many words. They further say that when an application for a transfer is made there has already been a hearing to determine whether or not the certificate should have been originally issued by the Commission and that the Commission has prior thereto determined that the certificate should be issued. It is said that upon a transfer the only question that the Commission has to determine is whether or not the transferee "is capable of operating it". We think though that in this contention the appellees overlook the fact that the Commission was created for the purpose of supervising the certificates that they have issued and when it appears to this Commission factually that a transfer should not be made for any of the reasons as set forth in sub-section (a) of the statute, above specifically referred to, "and all other pertinent facts" may be considered by the Commission. The language "and all

other pertinent facts'' are the last words in sub-section (a).

■ In the last sixty years Commissions of this type have attained a very important part in our regulation of affairs both State and nationally. For obvious reasons many things have been placed under various Commissions and these Commissions are given broad powers in the administration of the affairs submitted to them, and it is practically universally held that in so long as these Commissions do not fraudulently, arbitrarily or capriciously administer these affairs, then their discretion in the operation of whatever it is that they operate will not be disturbed by the court. This body, that is the Commission, is an administrative body and not a court, and we, as a Court, should not substitute our judgment for such an administrative body. *Southeastern Greyhound Lines, v. Dunlap,* 178 Tenn. 546, 160 S.W.2d 418. When the courts come to consider questions acted on by this Commission which are properly brought to the court, we should consider whether or not there is any material evidence to support the Commission and that the Commission has not acted fraudulently, arbitrarily or capriciously. *Hoover Motor Express Co. v. Commission,* supra. It is to be remembered too that the Commission in issuing the certificate originally must take into consideration the predominant consideration of the need of the people of the State, and not that of contending motor vehicles operating over the highways on which the certificate was issued. *Dunlap v. Dixie Greyhound Lines,* 178 Tenn. 532, 160 S.W.2d 413.

The factual situation developed in this case was that these certificates had been issued some four or five years prior to the present request for transfer, but that some

two years prior to this request these certificates had practically been abandoned, and as the dissenting Commissioner said they were "sick" certificates. During this time the holders of these certificates had more or less farmed out any rights that they had under the certificates to others. Thus it is that under the factual situation developed that the majority of the Commission concluded that the certificates "for all intent and purposes have been abandoned by Associated Transports, Inc."; that by reason of this fact the majority of the Commission concluded there was practically an abandonment under these certificates under the authority of *Continental Tennessee Lines, Inc. v. Fowler*, 199 Tenn. 365, 287 S.W.2d 22. We do not agree with this interpretation of the holding in this case. Be that as it may, the majority holding of the Commission did not base its conclusion on this fact in denying the transfers herein. The Commission said:

"Notwithstanding our conclusion that the certificates involved herein have been dormant for some time, and, therefore, not transferable, it is our conclusion that under 65-1507(d) supra, the joint petition of Tennessee Valley Express Company, Inc. and Associated Transports, Inc. has not shown sufficient proof as to the qualifications of said carrier for the operation of the proposed service which in effect will be a new service and create an additional competitive carrier along these route segments, where the record clearly indicates that there is not a sufficient volume of traffic to justify the creation of this service."

In support of this statement the majority of the Commission undertakes to point out reasons and proof why they make such a statement.

The proof shows that the present appellees, or the ones who are purchasing these certificates, had formed a corporation with a certain amount of capital stock and so much money paid in and that they had a contract to purchase other trucks, etc. On this proof that Chancellor "finds with the purchaser on these matters" and that the purchaser is adequately financed and its principal officers are of good experience, and that under the proof the purchaser has adequately qualified to purchase under the statute.

■■ Obviously this brings the two findings based on the same factual situation into disagreement, that is the finding of the Commission that there is not a proper qualification upon which to transfer, and the finding of the court that there is a proper qualification. Thus it is that the court, under the facts herein, did not find that this action of the Commission was fraudulent, arbitrary or capricious. The court simply disagrees with the finding of the Commission. Under the well established, practically universal, holdings of the court so far as we know, such a situation is contrary to our case law on findings of a Commission. In other words their findings must be left, that is the Commission's finding, as they are if there is any material evidence to support this finding and it is not arbitrary, fraudulent or capricious. Thus it is that we find in the holding of the Commission and the court herein a diametrically opposite conclusion based on facts, and such cannot stand under the present status of our case law. For the reasons hereinbefore set forth, and especially in view of the historical background of the duty of a Commisison of the kind, and the case law on the subject, the decree of the Chancellor must be reversed and that of the majority of the Commission upheld. The costs are adjudged against the appellees.