**SERVICE TRANSPORT, INC.,**
**Petitioner-Appellant,**

v.

**Keith BISSELL, Chairman, Commissioner Frank Cochran and Commissioner Jane Eskind, Constituting the Tennessee Public Service Commission, Respondent-Appellee.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

June 14, 1985.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 30, 1985.

Clarence Evans, Nashville, for petitioner-appellant.

Henry Walker, Nashville, for respondent-appellee.

William R. O'Bryan, Jr., Trabue, Sturdivant & DeWitt, Nashville, for intervenor appellee, Murfreesboro Freight Line Co., Inc.

Robert L. Baker, Buck, Baker & Bramlett, Nashville, for intervenor appellee, Averitt Express, Inc.

## OPINION

LEWIS, Judge.

This is an appeal by Service Transport, Inc. (Service) from the judgment of the Chancery Court for Davidson County upholding the denial by the Tennessee Public Service Commission (Commission) of transfer of certain motor carrier authority from Service to Hohenwald Truck Lines, Inc. (HTL).

The facts pertinent to our inquiry are as follows:

Murfreesboro Freight Lines (MFL) held Certificates of Authority to carry general commodities between Murfreesboro and Nashville and Nashville and Memphis.

MFL ceased operations on September 3, 1982, and on September 24, 1982, filed a petition in bankruptcy in the U.S. Bankruptcy Court for the Middle District of Tennessee. Among its assets were the Certificates of Authority granted by the Commission.

After MFL ceased operations, Service, under a lease agreement, operated MFL's Nashville-Murfreesboro Authority. MFL's Nashville-Memphis Authority was not operated by anyone, and all parties concede that this route was losing money when MFL filed its petition in bankruptcy.

MFL's Certificates of Authority were auctioned by the Bankruptcy Court. The

Bankruptcy Court insisted that both the Nashville-Murfreesboro and Nashville-Memphis operating authorities be sold as a package. Service, as the high bidder, agreed to pay $146,000 for both certificates, conditioned upon the Commission's approval of the transfer of the certificates to Service.

Service already held authority granted by the Commission to operate between Nashville and Memphis. Because of the regulatory precedent holding that a carrier may not hold duplicate authority, Service entered into an agreement to sell the Nashville-Memphis Certificate to HTL for $67,-000. The sale to HTL was conditioned upon the approval by the Commission. However, Service remained obligated to pay MFL the full amount of the purchase price under the contract approved by the Bankruptcy Court.

The amended petition of Service, MFL and HTL filed with the Commission sought approval of the transfer of MFL's Nashville-Murfreesboro Authority to Service and MFL's Nashville-Memphis Authority to HTL.

Subsequent to an evidentiary hearing, the Commission voted to deny the transfer. However, the members of the Commission could not agree on the rationale to support the decision, and it was not until August 31, 1983, that a written order was entered.

Within the statutory time limit, the Commission voted to reconsider its denial of the transfer of both Certificates of Authority. Upon reconsideration, the Commission approved the transfer of both the Nashville-Murfreesboro and the Nashville-Memphis Authority to Service. The Commission denied the Nashville-Memphis transfer from Service to HTL and cancelled the Nashville-Memphis authority because it duplicated the authority Service already had.

Service filed its petition, pursuant to Tenn.Code Ann. § 4–5–322, in the Chancery Court for Davidson County and sought judicial review of so much of the Commission's order denying transfer of the Nashville-Memphis Authority to HTL.

Averitt Express, Inc., Humboldt Express, Inc., and Jack C. Robinson, d/b/a Robinson Freight Lines, all of which hold operation authority between Nashville and Memphis were allowed to intervene in the Chancery Court. However, only Averitt has filed a brief in this Court.

The Chancellor, in a Memorandum Opinion filed on October 24, 1984, affirmed the decision of the Commission finding that "[t]he Commission has followed the transfer statute and the case construing the act in denying the transfer" and that the Commission's "decision is supported by substantial and material evidence in the record."

Judgment was thereafter entered affirming the decision of the Commission "[f]or the reasons stated by the Court" in the October 24, 1984 Memorandum.

In this Court, Service has presented four issues for review. They are:

1. Did the Public Service Commission's past decisions reflect uniform principles consistently followed in applying the motor carrier certificate transfer statute?

2. Did the Commission's Order denying the transfer of the Nashville-Memphis certificate from Murfreesboro Freight Lines, Inc. ["MFL"], to Hohenwald Truck Lines, Inc. ["Hohenwald"] follow these principles, or did it depart from them without logical explanation why it was so doing, and thereby do violence to the rule of law, settled decisional principles, Article 1, Section 8 of the Tennessee Constitution and the Fourteenth Amendment of the United States Constitution?

3. Assuming pro arguendo that whether the Nashville-Memphis traffic lane is overcrowded is a relevant matter, does material and substantial evidence in this record rationally support the Commission's conclusion that the lane was overcrowded, and that for that reason the transfer to Hohenwald should be denied?

4. Are protesting carriers entitled to protection against more aggressive com-

petition by Hohenwald, especially since they failed to disclose in evidence the facts from which the Commission could rationally determine whether such competition will significantly threaten or impair their continued operations?

We restate these issues as follows: (1) Did the Commission act arbitrarily and capriciously by applying to the transfer petition in this case a different standard than the Commission has applied in prior cases, *i.e.*, did the Commission comply with the transfer provisions of Tenn.Code Ann. § 65–15–107(d), and (2) is there substantial and material evidence in the record to support the decision of the Commission?

We first discuss whether the Commission correctly complied with Tenn.Code Ann. § 65–15–107(d), which is as follows:

When any certificate of convenience and necessity, or interstate permit, such as provided in subsection (a) and (b) of this section shall have been issued, and thereafter the motor carrier holding such certificate shall sell, transfer, or assign or lease the same or part thereof, then in that event, upon application to the commission, and if the commission shall be of the opinion that the purchaser thereof is in all respects qualified under the provisions of this chapter, to conduct the business of a motor carrier within the meaning thereof, the said certificate or permit originally issued to such motor carrier, or part thereof, shall be by the commission transferred to the purchaser, and be effective in like manner as though originally issued to such purchaser; provided, however, that it is hereby declared to be unlawful to triplease, for either single or multiple individual trips, a certificate of convenience and necessity without the prior approval of the commission, after notice and hearing.

Service argues that the "test is whether the proposed transferee is 'in all respects qualified.'" It is Service's insistence that the only "concern is with the qualifications of the new transferee-operator of an already existing certificate." It argues that "to construe the statute to require the

transferee to establish the same factors he would if the application were under subsection (a) is to make a nullity of the language of subsection (d)." We think not.

The Supreme Court in *Associated Transport, Inc. v. Fowler*, 206 Tenn. 642, 337 S.W.2d 5 (1960), in construing subsection (d), stated in part as follows:

We now come to consideration of subdivision (d) of this Section and its relationship and application to subdivision (a), . . . .

The question involved in this lawsuit is, what is the meaning and purpose of the language of subsection (d) . . .; what is the meaning "is in all respects qualified under the provisions of this chapter". . . ." The clear meaning thereof was, before these certificates were sold etc. or could be transferred and recognized as operative in the purchaser, that they should convince the Commission of their qualifications to operate under these certificates of convenience and necessity just as they would if they had applied for the certificate under condition (a) of the Act, that is, that the kind of service they could and were capable of rendering, their financial condition, character of the applicant, character of the highways, effect thereon on the traveling public, public demand and these various things, as quoted in the outset hereof. . . . No discretionary right is taken away from the Commission that is given it by sub-division (a) above to grant a certificate by the language of sub-division (d) so long as the Commission does not act arbitrarily or capriciously under the evidence before it in granting or denying the transfer of these certificates. The Act merely provides that if the purchaser "is in all respects qualified" then the Commission must grant the transfer. The only way the courts can enter into the granting or denial of such a transfer is by the showing that the Commission is acting arbitrarily and capriciously in the matter.

*Id.* at 645–647, 337 S.W.2d at 7.

Service contends that the language of *Associated Transport* does not apply to

the facts of this case since *Associated Transport* "went much further in expanding 'in all respects qualified,' when it so broadly wrapped subsection (a) considerations into subsection (d), than was necessary for the decision of [*Associated Transport*]."

█ We cannot agree. We agree with the Court in *Associated Transport* that "[t]he clear meaning" of subsection (d) is that a transferee must convince the Commission of the transferee's qualifications to operate "just as they would if they had applied for the certificate under" subsection (a).

The Supreme Court's interpretation of Tenn.Code Ann. § 65–15–107(d) is not dictum and must be followed by this Court until such time as the Tennessee Supreme Court interprets subsection (d) differently or the General Assembly sees fit to amend subsection (d).

Service says that in any event *Associated Transport* should be distinguished from the facts in this case and that in other cases similar to this case, the Commission has done so. It is Service's assertion that the Commission, while recognizing the language of *Associated Transport*, has taken the position that it may take the factors of subsection (a) in passing on a transfer under subsection (d) and "has consistently rejected or minimized consideration of such factors as the alleged effect on competing carriers, the need for service, and the like, in transfer proceedings where there has been no dormancy or abandonment such as existed in *Associated*."

In support of this assertion, Service cites several transfer cases heard by the Commission.[1] We have reviewed each of these cases and, with the possible exception of one of them, find no conflict with either Tenn.Code Ann. § 65–15–107(d) or with the Tennessee Supreme Court's opinion in *Associated Transport*. Each of these cases involved different parties, different routes, and different factual situations.

█ If the Commission had, in fact, applied a different standard in this case than it had in prior transfer cases and if the standard applied in the prior cases had been within the parameters of Tenn.Code Ann. § 65–15–107(d), then its actions in this case probably would have been arbitrary and capricious. However, we are of the opinion that the Commission has not applied standards to the transfer of MFL's operating authority inconsistent with the

1. *In re Joint Petition of Tennessee Motor Lines, Inc. and Warren County Freight Line to Transfer Certificate of Convenience and Necessity No. 1339–E,* Docket No. MC–7352.

*In re Joint Petition Seeking Approval of Purchase of Tennessee Intrastate Operating Authority of ET & WNC Transportation Company by Averitt Express, Inc.,* Docket No. MC–7812.

*In re Joint Petition of Volunteer Express and Tennessee Motor Lines, Inc.* and *Joint Petition of Humboldt Express and Tennessee Motor Lines Seeking Transfer of Certain Certificates of Convenience and Necessity from Tennessee Motor Lines, Inc. to Humboldt Express, Inc. and Volunteer Express, Inc.,* Docket Nos. MC–11810 and MC–11811.

*In re Petition to Transfer Certificates Nos. 233–A, 233–B and 233–E together with alternate routes from Terminal Transport Company, Inc. to Jack Robinson, d/b/a Robinson Freight Lines,* Docket No. MC–4441, sub 6; *Petition to Transfer Certificates Nos. 233–G, 233–H, together with alternate routes from Terminal Transport Company, Inc. to the Robinson Freight Lines, Inc.* (assigned to Murfreesboro Freight Lines, Inc.), Docket No. MC–2550, sub 6.

*In re Petition of Shelbyville Express, Inc. for approval For Purchase of Tennessee Intrastate Operating Authority of Lewisburg Transfer Company, Inc.,* Docket No. MC–8737.

*In re Petition of Humboldt Express, Inc. for Approval of Purchase of a Portion of Tennessee Intrastate Operation Authority of Merchants Freight Lines, Inc.,* Docket No. MC–9889.

*In re Joint Petition of Service Transport, Inc. and Robert Waldschmidt, Trustee, for William Hayes Lines, Inc. for Approval of Transfer of Certain Certificates of Convenience and Necessity,* Docket No. MC–13036.

*In re Petition of Hohenwald Truck Lines for Approval of Purchase of Tennessee Intrastate Operating Authority of Pulaski Highway Express,* Docket No. MC–11352.

*In re Application of Warren County Freight Lines, Inc. for Certificate of Convenience and Necessity to Transport General Commodities (except classes A and B explosives, household goods as defined by the Commission, and commodities in bulk) over irregular routes,* Docket No. MC–5487, sub 8.

standards in other transfer cases. This issue is without merit.

We next consider whether there is substantial and material evidence in the record to support the Commission's decision.

■ The Uniform Administrative Procedures Act requires a review of the facts and findings of the Commission upon a standard of substantial and material evidence in consideration of the entire record. Tenn.Code Ann. § 4–5–117; *Humana of Tennessee v. Tennessee Health Facilities*, 551 S.W.2d 664, 667 (Tenn.1977). It is the Commission's function and not the court's to weigh the evidence. Tenn.Code Ann. § 4–5–322. The Commission's decision will be upheld if there is substantial and material evidence in the record unless the Commission has acted arbitrarily and capriciously. *C F Industries v. Tennessee Public Service Commission*, 599 S.W.2d 536, 540 (Tenn.1980).

While Tenn.Code Ann. § 65–15–107(a) governs the issuance of original certificates of convenience and necessity, upon the filing of a petition to transfer existing certificates under Tenn.Code Ann. § 65–15–107(d), the Commission may consider the factors set forth in Tenn.Code Ann. § 65–15–107(a). *Associated Transport*, 206 Tenn. at 645, 647, 337 S.W.2d at 7. The factors to be given "reasonable consideration" by the Commission are: (1) existing transportation facilities, (2) the capabilities as to service that the applicant offers, (3) the applicant's financial soundness and character, (4) the quality of the highways, (5) the public demand or need for additional services, (6) the likelihood that the new service will be permanent and continuous, (7) the effect on competing truck lines if the certificate is granted, and (8) "all other pertinent facts."

■ In this case it is without question that HTL is financially sound and has the equipment to service the route. However, the Commission found, and the record supports the finding, that this is "an overcrowded market," that there are presently nine (9) carriers serving the Nashville-Memphis route, and that there are suffi-cient existing transportation facilities on this route.

An attempt has been shown of the public demand or need for additional service by introduction of the traffic records of MFL. No shipper witnesses were offered. The record shows that prior to ceasing operations, MFL had generated only about $400 per day in revenues from the Nashville-Memphis route. MFL's witness testified that there was not enough Nashville-Memphis traffic to justify MFL's service between Nashville and Memphis, and that the route was a loser for MFL. The Commission found that there simply was not enough revenue base to justify transferring the Nashville-Memphis authority of a carrier which went bankrupt trying to provide service in a tremendously overcrowded market. While the record would not support a finding that the only cause of MFL's bankruptcy was the Nashville-Memphis route, there is ample evidence that the poor revenue generated was a substantial factor. There has been a failure to show a public demand or need for additional service.

While it is abundantly clear that carriers presently holding authority between Nashville and Memphis do not have protection from competition, *Dunlap v. Dixie Greyhound Lines*, 178 Tenn. 532, 544, 160 S.W.2d 413, 418 (1942), the Commission, in granting operating authority, may consider the effect on competing truck lines.

The Commission in this case found, and we are of the opinion that the record supports that finding, that Averitt has shown that the possible diversion of traffic from Averitt would be sufficient to adversely affect Averitt's operation or impede Averitt's ability to provide service.

There is substantial and material evidence to support the decision of the Commission that "no need has been shown for additional service."

It results that the judgment of the Chancery Court is affirmed with costs assessed against Service and the cause remanded for the collection of costs and any further necessary proceedings.

CANTRELL and KOCH, JJ., concur.